Nicholas Peiffer and Ethel Peiffer, Plaintiffs, v.
William French, Appellee.
Appeal of Ethel Peiffer, Appellant.

Gen. No. 40,889.

BURKE, J., dissenting.

Original opinion filed April 10, 1940.  Rehearing opinion filed June 19, 1940.  Rehearing denied September 10, 1940.

Owens & Owens, of Chicago, for appellant.

Ashcraft & Ashcraft, of Chicago, for appellee; Charles H. G. Kimball, of Chicago, of counsel.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

Plaintiff Ethel Peiffer brings this appeal to reverse an order of the circuit court of Cook county which was entered on February 9, 1939, quashing the writ of *capias ad satisfaciendum* issued on December 6, 1938, in a suit which was instituted in the circuit court by Nicholas Peiffer and Ethel Peiffer v. William French, wherein a judgment was obtained against William French on April 21, 1938, and in favor of plaintiffs aforesaid, in the amounts of $10,625 and $400, respectively, for personal injuries sustained by them in an automobile collision. The jury answered a special interrogatory finding the defendant William French guilty of wilful and wanton misconduct at the time and place in question.

On September 2, 1938, a writ of *capias ad satisfaciendum* was issued on both judgments against the defendant, William French. He was committed to the county jail on September 19, 1938. On December 6, 1938, an alias writ of *capias ad satisfaciendum* was issued in favor of plaintiff Ethel Peiffer, against the defendant William French. On motion of the defendant, this writ was quashed by order of court entered on February 9, 1939, from which plaintiff Ethel Peiffer appeals.

The theory of the plaintiff Ethel Peiffer, is that she is entitled to enforce her judgment against the defendant, William French, through the means provided by statute. The *capias ad satisfaciendum* dated December 6, 1938, was issued pursuant to the statute in such case made and provided, and was based on a valid judgment in favor of plaintiff which had not been set aside or satisfied.

The theory of the defendant is that he relied upon only one proposition, and that is that a person who had been discharged by an order of court on a habeas corpus shall not be again imprisoned for the same cause; that there are exceptions to this proposition, but the plaintiff fails to bring her case within such exceptions.

It appears that on Monday, September 19, 1938, the defendant was taken into custody on a writ of *capias ad satisfaciendum* and on the same day the plaintiffs paid to the sheriff the sum of $4 for board and jail fee of defendant commencing September 19, 1938; that on Saturday, September 24, 1938, the plaintiffs tendered $3.50 to the sheriff of Cook county for board for the second week, but the sheriff refused to accept the payment on that day as being premature; that thereafter on Tuesday, September 27, 1938, the plaintiffs paid $3.50 to the sheriff for board of the defendant for the second week.

It further appears that on September 29, 1938, a writ of habeas corpus was issued and on the same day the defendant was released on bond; that on October 10, 1938, an order was entered by the circuit court discharging the defendant from the custody of the sheriff, for the reason as shown in the draft order of the court, so that the board of the defendant was due on September 26, 1938, and because it was paid on September 27, 1938, the defendant was illegally detained.

It further appears that thereafter, on December 6, 1938, an alias writ of *capias ad satisfaciendum* was issued by the clerk of the circuit court on the judgment in favor of Ethel Peiffer. The defendant moved to quash the writ on the grounds that its issuance was contrary to the Habeas Corpus Act and on February 9, 1939, the circuit court entered an order quashing said writ.

There are several sections of the statutes of this State which must be considered in determining what

was the intent of the legislature with regard to imprisonment for debt. There is no claim made as to the validity of the judgment or that a writ of *capias ad satisfaciendum* is not the proper means of enforcing the payment of a judgment. Chapter 65, section 26, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann: 109.338], known as the Habeas Corpus Act, reads as follows:

''No person who has been discharged by order of the court or judge, on a habeas corpus, shall be again imprisoned, restrained or kept in custody for the same cause, unless he be afterwards indicted for the same offense, nor unless by the legal order or process of the court wherein he is bound by recognizance to appear. The following shall not be deemed to be the same cause:

''1. If, after a discharge for a defect of proof, or any material defect in the commitment, in a criminal case, the prisoner should be again arrested on sufficient proof, and committed by legal process for the same offense.

''2. If, in a civil suit, the party has been discharged for any illegality in the judgment or process, and is afterwards imprisoned by legal process for the same cause of action.

''3. Generally, whenever the discharge has been ordered on account of the non-observance of any of the forms required by law, the party may be a second time imprisoned if the cause be legal and the forms required by law observed.''

It seems to us that the issue here is narrowed down to the question as to whether or not the defendant was discharged in the habeas corpus proceeding because of the nonobservance of one of the forms of procedure as required by law coming within the meaning of the Habeas Corpus Act as set forth above. There is no clearly defined decision in this State directly applicable except that in the case of *Stroheim v. Deimel,* 77

Fed. 802, p. 807, which case has been cited by appellant. We quote with approval a portion of the concurring opinion in that case which we think is more enlightening than is the majority opinion. District Judge Bunn, sitting in the court of appeals said:

"I concur fully in the general conclusion that the order of the circuit court discharging the prisoner must be reversed. . . .

"When the prisoner was arrested and sent to jail, a week's board was paid by the creditor in advance, according to the statute; but for mere convenience of sending, being nonresidents of the state, after the first week the money was sent in sums larger than was required to pay just a week's board in advance, but was always sent in advance. So that there was no time when the jailer was entitled to discharge the prisoner, unless because the board bill was paid more in advance than was required by the statute; and it is on this ground the prisoner asked to be discharged, and was discharged by the court below. This is one of the points mainly relied upon by the defendants in error, both in the circuit court and in this court. It is fairly in the case, and may just as well be decided. In my judgment, this point should be ruled against the prisoner, and the order of the circuit court reversed on that ground. I am willing to go as far as any one in adopting a strict construction in favor of personal liberty, provided, always, that a remnant of propriety and good legal sense attend the decision. This provision of the statute was evidently intended as an indemnity to the jailer for the prisoner's board while in jail. The prisoner was not liable for that. The creditor must pay it, and, as security to the jailer, it was provided that he must pay it in advance, so that the jailer would not have to trust to the creditor. If the creditor should not keep the board bill up by paying a week in advance, the jailer *might* discharge the prisoner. He was not *obliged* to, but he *might* do it. The prisoner had no interest in the matter of the

board, except that it should be furnished him at the creditor's cost. If he got his board, it was no great concern of his how long in advance it was paid for by the creditor. The circuit court held that a strict compliance with the statute required the board to be paid just a week in advance, and not more; and, because it was paid two weeks in advance, the prisoner was entitled to be discharged. I know of no decision, ancient or modern, English or American, adopting so strict a rule of construction, and a priori would never expect to find one, for it would seem beyond question that payment of the board bill two weeks or more in advance is not only a substantial, but a literal compliance with the statute. Payment two weeks in advance includes payment a week in advance. When one week is closed out, the money for the next week is already in the hands of the jailer, as required by the law; and who is wronged by the money lying there a week or two week longer than the statute requires?"

It appears that in 1845 the Illinois Legislature changed the original Insolvent Debtors Act. Section 2 of said act, among other things, provides:

"If, at any time, the plaintiff, his agent or attorney shall fail to advance the jail fees, as herein provided, it shall be the duty of the officer or jailer, as the case may be, forthwith to discharge the prisoner."

The Act of 1853, entitled "AN ACT in relation to committals to jail on writs of *ca. sa.*" amended section 2 of the act is as follows:

"Should such debtor be detained in jail under such writ for more than one week, it shall be the duty of such creditor at the commencement of each week to advance and pay to such jailer or sheriff the board of such debtor for each succeeding week that such debtor may be detained in such jail, and in default of such payment in advance, said debtor may be discharged by such jailor or sheriff."

In 1872 the present act governing the committal of

insolvent debtors to jail was passed by the legislature. The language of paragraph 30 of the present act (Ill. Rev. Stat. 1937, ch. 72, par. 30 [Jones Ill. Stats. Ann. 109.048]) uses the same language as that of the Act of 1853, and reads as follows:

"Should the debtor be detained in jail under such writ [evidently meaning the writ of *capias ad satisfaciendum*] for more than one week, it shall be the duty of the creditor, *at the commencement of each week*, to advance to such jailor the board of the debtor for the succeeding week, and in default of such payment in advance, the debtor may be discharged by such jailor."

In 59 Corpus Juris at p. 1082, it was said:

"So, where a section of a statute is amended by striking out '*may*' and inserting 'shall' in lieu thereof, an intent is shown to alter the directory nature of the law and render it mandatory; and conversely, an amendment substituting 'may' for 'shall' manifests a clear intent to make the act referred to optional and permissive instead of mandatory."

In the case of *People ex rel. Carson v. Muldoon,* 306 Ill. 234, the Supreme Court in commenting on the use of words, at p. 238, said: "It is the settled rule that words used in a statute are to be given their ordinary meaning in general and popular use unless the court is certain that it is following the legislative intent in giving them a different meaning. (*Way v. Way,* 64 Ill. 406; *Chudnovski v. Eckels,* 232 id. 312; *Culver v. Waters,* 248 id. 163.)"

We think where a section of a statute was amended by striking out the word "shall" and inserting the word "may" it was the intent of the legislature to remove the mandatory provisions of the statute compelling the sheriff to discharge the prisoner. In the

instant case the sheriff had received all his charges and was satisfied therewith at the time the motion to quash was made. We do not think such narrow construction should be placed upon the language of the statute as it would substantially destroy the imprisonment statute. It is quite evident the purpose of the legislative act in requiring the amount of money to be paid in advance was to protect the taxpayers against the burden of supporting a debtor who had been imprisoned.

If the phrase ''commencement of the week'' were to be literally and strictly construed as claimed for, it would begin on Sunday and it would be difficult, if not impossible, to comply with such interpretation of the statute. And, more strictly speaking, the ''week'' woud commence at midnight and such narrow construction of the language used would create a situation fraught with many obstacles. It seems to us that if a sheriff receives a prisoner's board in advance and is satisfied with it as being in compliance with the statute, the time of payment could not thereafter be used as a basis for the quashing of a writ. In the instant case plaintiff tendered the amount of the weekly board money on Saturday and the sheriff refused it because the payment was tendered too soon. The next day was Sunday, a holiday, and thereafter on the following. Tuesday the sheriff accepted the money as being his interpretation as the proper time for such payment. We think a common-sense interpretation of this statute is that the payment of the money in advance, within a reasonable time, and the sheriff's willingness to accept the same, is all that is required by the statute. Consequently, we are of the opinion that the court erred in quashing the writ and releasing the prisoner.

For the reasons herein given the order of the circuit court is reversed and the cause is remanded with di-

rections to vacate the order quashing the writ and that the defendant be returned to jail.

*Order reversed and cause remanded with directions.*

HEBEL, J., concurs.

MR. JUSTICE BURKE, dissenting: On Monday, September 19, 1938, the defendant was taken into custody. On that day plaintiffs paid the sheriff $4 to cover the jail fee and the board for one week. On Saturday, September 24, 1938, plaintiffs tendered $3.50 to the sheriff for board for the second week, which payment the sheriff refused to accept at that time on the ground that it was premature. On Tuesday, September 27, 1938, plaintiffs paid $3.50 to the sheriff for board of the defendant for the second week. On October 10, 1938, an order was entered in the circuit court discharging defendant, following the return to a writ of habeas corpus. Defendant was discharged because the board for the second week was due on September 26, 1938, and was not paid until September 27, 1938. The court was of the opinion that defendant was illegally detained. On December 6, 1938, on demand of plaintiffs, the clerk issued an alias writ of *capias ad satisfaciendum*. Before the writ was served, defendant moved to quash the same, based on the contention that it was issued contrary to the provisions of the Habeas Corpus Act. On February 9, 1939, the circuit court quashed the writ and this appeal followed. In the case in which the writ issued there was a verdict and judgment against the defendant. The jury also answered the following interrogatory in the affirmative: ''Was the conduct of the defendant, William French, in the operation of his automobile, at the time of the occurrence in question, of such reckless character as to amount to wilful and wanton misconduct?''

Section 5, ch. 77, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.155], provides that ''No execution shall issue against the body of the defendant except

when the judgment shall have been obtained for a tort committed by such defendant, and it shall appear from a special finding of the jury, or from a special finding by the court, if the case is tried by the court without a jury, that malice is the gist of the action, and except when the defendant shall refuse to deliver up his estate for the benefit of his creditors." The parties treat the answer to the interrogatory as a special finding by the jury that malice was the gist of the action. In view of the fact that no appeal was taken from the action of the court in entering an order discharging the defendant in the habeas corpus proceeding, such action must be looked upon and accepted as proper. Section 26, ch. 65, Ill. Rev. Stat. 1939 (section 26 of the Habeas Corpus Act [Jones Ill. Stats. Ann. 109.338]) provides that "No person who has been discharged by order of the court or judge, on a habeas corpus, shall be again imprisoned, restrained or kept in custody for the same cause, unless he be afterwards indicted for the same offense, nor unless by the legal order or process of the court wherein he is bound by recognizance to appear. The following shall not be deemed to be the same cause:

"1. . . .

"2. . . .

"3. Generally, whenever the discharge has been ordered on account of the nonobservance of any of the forms required by law, the party may be a second time imprisoned if the cause be legal and the forms required by law observed."

The theory of plaintiffs is that the discharge by the court in the habeas corpus proceeding was because of the nonobservance of a form required by law, and that hence under the exception to section 26 defendant may again be imprisoned and kept in custody for the same cause. Section 29, ch. 72, Ill. Rev. Stat. 1939 (section 30 of the Insolvent Debtors Act [Jones Ill. Stats. Ann. 109.407]) provides that under a writ of *capias ad satisfaciendum* it shall be the duty of the creditor to

pay the sheriff his fees for receiving such person, and his board for one week at the time the debtor is committed to jail and before the jailer shall be bound to receive the debtor, and in default of such payment, the debtor may be discharged. Section 30, ch. 72, Ill. Rev. Stat. 1939 (section 31 of the Insolvent Debtors Act [Jones Ill. Stats. Ann. 109.408]) provides that should the debtor be detained for more than one week, it shall be the duty of the creditor, at the commencement of each week, to advance to such jailer the board of the debtor for the succeeding week, and in default of such payment in advance, the debtor may be discharged by such jailer. Plaintiffs invite attention to the fact that the sections mentioned state that the creditor ''shall'' pay the board and advance the board of the debtor, and that in default of such payment in advance the debtor ''may'' be discharged by such jailer, and argue that the defendant is not concerned with the payment of the board and that the sheriff has the sole right to determine when the board shall be paid. Based on this premise, plaintiffs insist that the payment of the board in advance is a mere form. It is well established that the courts lean toward that construction of statutes which is in favor of personal liberty. The words of the statute are mandatory in requiring the creditor to pay the board in advance. If the sheriff may exercise a discretion, then under similar facts he may keep one debtor in custody and release another. I do not believe that the sheriff is vested with any such discretion. The jail is built and maintained at the expense of the taxpayers, and the food for all prisoners is purchased as a result of appropriations from the public funds by the board of county commissioners. If the sheriff does not collect the board, then the loss must fall on the taxpayers, or on the sheriff. Nor do we know of any provision for the issuance of an alias writ of *capias ad satisfaciendum*. If the sheriff pays the board then in effect he

becomes an interested party which the law does not tolerate.

I am of the opinion that the discharge of defendant under the habeas corpus proceeding was not because of the failure to observe a form required by law. The fact that the statute states that the creditor "shall" advance the board, shows clearly such payment in advance was not intended to be a mere form. Plaintiffs suggest that the only way they can collect their judgment is by proceeding under the *capias ad satisfaciendum*. It is patent, however, that plaintiffs have the right to collect their judgment in any lawful manner. The tendency of legislation has been to discourage the use of the writ. If plaintiffs' argument is valid, then there is no reason why a creditor may not advance the board for one week, then fail to advance it for the succeeding week, and then after the debtor has been released and is attempting to earn a livelihood, cast him into prison again, thereby playing with him like a cat with a mouse, and snapping him in and out of prison at will. I am of the opinion that the court was right in discharging defendant in the habeas corpus proceeding and in sustaining the motion to quash the writ of *capias ad satisfaciendum*.

## On Rehearing.

This cause comes before us on a rehearing. An opinion was heretofore filed by this court in the above entitled cause on April 10, 1940. Our attention has been called to the fact that the Supreme Court in the recent case of *Ingalls v. Raklios*, 373 Ill. 404, has changed the rule with relation to the issuance of a *capias ad satisfaciendum*, by requiring that the judgment order of the court contain the statement that malice is the gist of the action and not as formerly, that the verdict of the jury finding such fact was sufficient.

In the case of *Ingalls v. Raklios*, 373 Ill. 404, which cause was before this court and was thereafter appealed

to the Supreme Court, that court in reversing the decision of the Appellate Court, said:

"Under section 5, as amended, the clerk of the court is not authorized to issue an execution against the body of the defendant, unless the *judgment* shows that it was entered upon an action for a tort committed by the defendant and that the *judgment* contains a special finding of the jury or the court (if the case is tried without a jury) that *malice was the gist of the action*. If a defendant against whom a writ was issued desires to challenge the sufficiency of the judgment as regards to question of the findings of malice, his remedy is to apply to the court entering the judgment to quash the writ. The provisions requiring that before an execution for the body of the defendant shall issue the judgment shall show that the judgment was obtained for a tort committed by the defendant and that *malice was the gist of the action,* are mandatory and *if such findings do not appear on the face of the judgment,* the clerk is without authority to issue the writ. The duty imposed by statute upon the clerk to issue the writ is a ministerial act and he *is not permitted to refer to the pleadings to determine whether malice was the gist of the action for the determination of such question is a judicial act. A complaint which states a cause of action having malice as the gist,* does not authorize the clerk to issue the writ, *unless the judgment contains the essential elements prescribed by statute.*

"... it is apparent that a defendant could be actuated by malice in committing a tort against the plaintiff and yet malice not be the gist of the action. The statement in the judgment that the court makes a special finding of malice is not the equivalent of a finding that malice was the gist of the action upon which judgment was entered.

"The statement in the judgment that the court found the defendant guilty as charged in plaintiff's claim does not permit a reference to the complaint to determine

whether the allegations of fact alleged therein made malice the gist of the action. As pointed out, if such reference was permitted, it would authorize the clerk issuing the writ to construe the pleadings in determining the legal effect to be given and thus exercise a judicial act.

"The judgment in this case does not meet the requirements of the statute and the writ of *capias ad satisfaciendum* was wrongfully issued." (Italics ours.)

In the case of *Lipman v. Goebel,* 357 Ill. 315, a judgment was entered on a declaration charging wilful and wanton injury. The defendant applied for release under the Insolvent Debtors' Act. The Supreme Court in holding that the defendant was not entitled to his release, said at p. 319:

"Section 2 of the Insolvent Debtors' act . . . provides the procedure for the discharge of a debtor seized and imprisoned. A person . . . imprisoned upon a *capias ad satisfaciendum* where malice is the gist of the action is not entitled to discharge upon the surrender of his property. . . . 'malice,' . . . applies to . . . wrongs . . . inflicted with an evil intent, design or purpose, implies that the guilty party was actuated by improper or dishonest motives and requires intentional perpetration of an injury. . . . However, the term does not necessarily mean that the person . . . bears any spite, grudge or ill-will towards the person against whom the wrong is inflicted. . . . 'gist of the action' means 'the essential ground or object of a suit and without which there is not a cause of action.' . . . Whether malice is the gist of the action is determined from the charges made in the declaration."

Other cases in line with *Lipman v. Goebel, supra,* are *In re Petition of Rosenberg v. Ott,* 285 Ill. App. 50; *Mantske v. Rhutassel,* 248 Ill. App. 492; *In re Petition of Miles v. Glad,* 299 Ill. App. 185; *Fromm v. Seyller,* 245 Ill. App. 392.

We have carefully considered the *Raklios* case *supra,* and we have come to the conclusion that in that case the Supreme Court put a different construction on the statute than theretofore, so that in order to obtain the issuance of a writ of *capias ad satisfaciendum,* it must appear from the judgment order itself a finding that *"malice is the gist of the action."*

If, as we think, we have put a proper construction upon the language used by the Supreme Court, then in the absence of such finding by the trial court in the instant case, we would not be justified in adhering to the former opinion filed by this court in this case. While it is true the former opinion filed by this court in this case was based upon the question of time of payment to the sheriff of money for the board of the defendant while he was in jail, yet we are of the opinion upon a reconsideration of the question raised on the petition for rehearing, although different from the one originally presented, that inasmuch as the judgment order in this case does not contain the finding that malice was the gist of the action, we should change our decision. We have in mind that part of the Supreme Court's opinion in the *Raklios* case, wherein it is said, "A complaint which states a cause of action having malice as the gist, does not authorize the clerk to issue the writ, unless the judgment contains the essential elements prescribed by statute."

We think it is our duty to follow the latest rulings and decisions made by our Supreme Court, and for that reason we hereby rescind our former decision and in lieu thereof we hereby enter an order affirming the action of the trial court in discharging the defendant.

For the reasons herein given, the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

HEBEL, J., concurs.

MR. JUSTICE BURKE, specially concurring: Prior to 1935, section 5 of chapter 77 of the act in regard to

judgments and decrees read: "No execution shall issue against the body of the defendant, except when the judgment shall have been obtained for a tort committed by such defendant, or unless the defendant shall have been held to bail upon a writ of *capias ad satisfaciendum* [*respondendum*] as provided by law, or shall refuse to deliver up his estate for the benefit of his creditors." This section was amended in 1935 so that it now reads (sec. 5, ch. 77, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.155]): "No execution shall issue . . . except when the judgment shall have been obtained for a tort committed by such defendant, and it shall appear from a special finding of the jury, or from a special finding by the court, if the case is tried by the court without a jury, that malice is the gist of the action, and except when the defendant shall refuse to deliver up his estate for the benefit of his creditors." Prior to the 1935 amendment of section 5, a *capias ad satisfaciendum* could issue on any tort judgment. A defendant apprehended under such a *capias* could be released on application to the county court under the provisions of the Insolvent Debtors' Act, (ch. 72, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.378 et seq.]), provided the court determined that malice was not the gist of the action. Under the 1935 amendment the clerk is not permitted to issue a *capias ad satisfaciendum* except where the judgment has been obtained for a tort committed by such defendant and where it shall also appear that the jury or the court (if the case is tried without a jury) made a special finding that malice was the gist of the action. Hence, under the statute as amended, in a tort case the clerk is not permitted to issue a *capias ad satisfaciendum* in the absence of a special finding. When such a *capias* issues and the defendant feels himself aggrieved by the action, his remedy now is to apply to the court where the judgment was rendered, to have such execution quashed. Therefore, the only change made by the 1935 amendment is to require the court

or the jury to make a special finding that malice is the gist of the action. Under the law, prior to the 1935 amendment, in order to determine whether malice was the gist of the action, it was necessary for the county judge to determine that question from the pleadings and the transcript of evidence. Thus, controversies arose in nearly all cases. The purpose of the amendment was to remove the cause of these controversies by requiring a special finding that malice is or is not the gist of the action. Where a verdict or a finding of "guilty" is returned against a defendant, and also a special finding by the court or jury that malice is the gist of the action, the court may in a proper case sustain the verdict or finding of "guilty" and enter judgment thereon, and yet set aside the special finding of malice. Thus, under the amendment of 1935, the court, where the judgment is entered, retains jurisdiction to determine whether the finding that malice is the gist of the action, shall stand as a part of the judgment, or whether it shall be set aside. It is no longer necessary or proper to go into the county court to determine that issue. Under the provisions of the Insolvent Debtors' Act (ch. 72, Ill. Rev. Stat. 1939) the county court still retains jurisdiction of cases where a defendant (judgment debtor) refuses to deliver up his estate for the benefit of his creditors. I have carefully studied the case of *Ingalls v. Raklios*, 373 Ill. 404. It clearly appears from the record in that case that the trial court did not make a finding that malice was the gist of the action. Therefore, there was no attempt to comply with the provisions of section 5. The majority opinion herein assumes that the opinion in the *Raklios* case speaks of the judgment as not embracing the finding. A careful reading of the *Raklios* case convinces me that the court uses the word "judgment" as embracing the finding as well as the judgment. I quote from page 406 of the *Raklios* opinion "The pertinent parts of the judgment are 'Court makes special finding of malice.

. . . ' '' Continuing on page 406, the opinion states that appellant's contention in that case is "that the judgment in this case does not meet the statutory requirements, in that there is no special finding by the court that malice was the gist of the action." On page 407 the court said: "Under section 5, as amended, the clerk of the court is not authorized to issue an execution against the body of the defendant, unless the judgment shows that it was entered upon an action for a tort committed by the defendant and that the judgment contains a special finding of the jury or of the court (if the case is tried without a jury) that malice was the gist of the action. . . . The provisions requiring that before an execution for the body of the defendant shall issue the judgment shall show that the judgment was obtained for a tort committed by the defendant and that malice was the gist of the action, are mandatory, and if such findings do not appear on the face of the judgment, the clerk is without authority to issue the writ. . . . The statement in the judgment that the court found the defendant guilty as charged in plaintiff's claim does not permit a reference to the complaint to determine whether the allegations of fact alleged therein made malice the gist of the action.'' It is not necessary to the validity of the judgment that any set form of words be used. In my opinion, the Supreme Court in the *Raklios* case used the word "judgment" in a broad sense. Where the court sustains the verdict of the jury that the defendant is guilty and also a special finding that malice is the gist of the action, by overruling the usual motions and entering a judgment on such findings, then the judgment embraces the findings. I agree with my colleagues that the judgment of the circuit court in the instant case should be affirmed, but I differ with them on their view of the intent of the opinion in the *Raklios* case. The only question before the court in that case was whether there was a special finding by the court that malice was

the gist of the action. The Supreme Court was of the opinion that the record did not show that there was any such special finding. The opinion in that case did go on to say "that a defendant could be actuated by malice in committing a tort against the plaintiff and yet malice not be the gist of the action." However, the court in that case did not discuss whether malice was the gist of the tort of which the defendant was found guilty. The court merely stated that a defendant "could be actuated by malice in committing a tort" without such malice being the gist of the action. The majority opinion herein also quotes from *Lipman v. Goebel,* 357 Ill. 315, wherein the term "malice" and the "gist of the action" are defined. My colleagues apparently are of the opinion that the *Raklios* case changes the classifications heretofore recognized of actions where malice is the gist thereof. Toward the end of the *Raklios* opinion, the court cites with approval *First Nat. Bank of Flora v. Burkett,* 101 Ill. 391, where at p. 394, the court said:

"In the case of *Harpham v. Whitney,* 77 Ill. 32, the case of *Mitchell v. Jenkins,* 5 B. & A. 594, was referred to as defining malice. It was there said by Parke, J., 'that the term "malice" in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus,* and as denoting that the party is actuated by improper and indirect motives.' That definition was applied in a case of malicious prosecution. The term has been defined: 'A formed design of doing mischief to another,'—'a wicked intention to do an injury to another.' Thus the forsaking of a husband or wife of the other, without sufficient cause, is said to be a malicious abandonment. Malicious mischief is the wanton or reckless destruction of or injury to property. It in some cases implies a wrong inflicted on another with an evil intent or purpose, and this is the sense in which it is employed in this statute. It requires the intentional perpetration of an injury or wrong on another. The wrong and intention to commit

the injury are necessary to deprive the party of the right to a discharge from arrest or imprisonment. In this case there was an intentional wrong, little, if anything, short of a criminal act, and it was malicious, in the statutory sense.

"Being malicious, was it the *gist* of the action? The *gist* is defined to be the cause for which an action will lie,—the ground or foundation of a suit, without which it would not be maintainable,—the essential ground or object of a suit, without which there is not a cause of action. In this case an action on the case could not have been maintained had not the defendant wrongfully and dishonestly drawn the money for which the hogs were sold, and for which he had given a draft to the bank on Green, Huddleson & Co., and for which draft the bank paid him. This fraud was of the essence or foundation of the action, and in the statutory sense it was both wicked and malicious." The doctrine in the above cited case, which the court approved in the *Raklios* case, arose out of a situation where a party shipped a lot of hogs to a commission merchant in Cincinnati for sale, taking a bill of lading from the railroad company, after which he applied for and obtained a loan of $400 from the bank, giving the bank a sight draft on the commission merchant and pledging the bill of lading, which he attached to the draft, and then before the draft was presented, collected the entire sum due from the commission men, leaving nothing to pay his draft, which was protested. The court held that this constituted an intentional wrong and was malicious, and that such malice was the gist of the action. In *Lipman v. Goebel, supra,* our Supreme Court held that malice may be made the gist of the action in a tort action if properly pleaded, even though some other form of action might lie. In the case at bar the jury returned a verdict of guilty and a special finding that the conduct of the defendant in the operation of his automobile was of such reckless character as to amount to wilful and wanton

misconduct. Under the authority of the *Raklios* case this special finding was not in compliance with section 5, as amended in 1935, in that it did not find that malice was the gist of the action. Inasmuch as the jury did not find that malice was the gist of the action, there was no compliance with section 5, and hence it is unnecessary for this court to now announce how we would rule if under the same set of facts the jury had brought· in a finding that malice was the gist of the action.

It is worthy of observation that section 5 of ch. 77, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.155], by its express language prohibits the issuance of a *capias ad satisfaciendum* unless, first, the judgment shall have been obtained for a tort committed by the defendant, and, second, that it shall appear from a special finding of the jury or court that malice is the gist of the action. Thus the legislature clearly recognized the distinction between the finding and the judgment. Where the finding by court or jury is finally sustained, it becomes merged in the judgment and a part thereof.

As stated in a dissenting opinion filed before the rehearing was granted, I am of the opinion that the defendant should prevail and the judgment should be sustained, based on the other points raised. Prior to the present proceeding the defendant had been discharged as the result of the issuance of a writ of habeas corpus. The order then discharging the defendant was a final order, and being a civil case the plaintiffs had a right to appeal. No appeal was prosecuted. The order of discharge having disposed of the controversy a plea of *res judicata* was appropriate. Subsequently, on the demand of plaintiffs, the clerk issued an *alias* writ of *capias ad satisfaciendum.* I do not know by what authority the clerk has the right to issue an *alias* writ of *capias ad satisfaciendum.* Defendant moved to quash this writ, which motion was sustained by the court. The basis for releasing the defendant in the habeas corpus proceeding was that the plaintiffs had failed to pay de-

fendant's board in due time. The plaintiffs maintain that the discharge of the defendant in the habeas corpus proceeding was because of failure to observe a form required by law, and that under the provisions of section 26, ch. 65, Ill. Rev. Stat. 1939 (section 26 of the Habeas Corpus Act) defendant may be again imprisoned. I am of the opinion that the discharge of defendant under the habeas corpus proceeding was not because of the failure to observe a form required by law. The fact that the statute declares that the creditor "shall" advance the board shows clearly that such payment in advance was not intended to be a mere form. Plaintiffs suggest that the only way they can collect their judgment is by proceeding under the *capias ad satisfaciendum*. It is patent, however, that plaintiffs have the right to collect their judgment in any lawful manner. If plaintiffs' argument is valid then there is no reason why a creditor may not advance the board for one week, then fail to advance it for the succeeding week, and then after the debtor has been released and is attempting to earn a livelihood, cast him into prison again, thereby playing with him like a cat with a mouse, and snapping him in and out of prison at will. I am of the opinion that the court was right in discharging the defendant in the habeas corpus proceeding, and also in sustaining the motion to quash the writ of *capias ad satisfaciendum*.