People ex rel. J. Roger Pryor, Relator-Appellant, Thaddeus B. Rowe, Petitioner-Appellant, v. Joseph D. Lohman, Sheriff of Cook County; Jack Johnson, Warden of Cook County Jail, Appellees.

Gen. No. 47,019.

First District, Second Division.

April 9, 1957.

Released for publication May 21, 1957.

 

Moore, Ming & Leighton, by Thaddeus B. Rowe, of Chicago (Moore, Ming & Leighton, Thaddeus B. Rowe, of Chicago, of counsel) for relator-appellant.

John Gutknecht, State's Attorney of Cook county, of Chicago (Gordon B. Nash, Charles D. Snewind, and William Sylvester White, Assistant State's Attorneys, of Chicago, of counsel) for respondents-appellees.

JUDGE SCHWARTZ delivered the opinion of the court.

Relator appeals from an order quashing a writ of habeas corpus and remanding him to the custody of appellees.

The facts are that the relator had been committed pursuant to a judgment entered December 23, 1955, on a verdict containing a special finding that malice was the gist of the action. In January 1956 a capias was ordered from the clerk of the court. Because of subsequent post-trial motions the capias was never placed with the sheriff for service. More than two months elapsed before the post-trial motions were disposed of, and the clerk of the court thereupon suggested that since there was not sufficient time remaining in the life of the capias to obtain service, an alias be issued. (Ninety days is the limit within which all writs must be returned. Ill. Rev. Stat. 1955, Ch. 77, Sec. 8.) The alias writ was issued March 7, 1956. At that time there was deposited with the sheriff funds with which to pay one week's board in advance. Relator was taken into custody March 22, 1956. A motion to quash was

duly filed, and the court ordered the sheriff to produce the body of the relator before the court on March 23, at 10:00 o'clock A.M. On the 23rd the court granted a continuance to March 27 and ordered the relator to remain in the county jail until the further order of the court and that he be remanded to the sheriff to produce him before the court on the 27th. On March 27 the cause was continued to the next day and on the 28th the court entered an order denying the motion to quash. On March 29 the judgment creditor again deposited $3.50 for one week's board. This habeas corpus proceeding was then commenced and the orders appealed from were entered.

■ Appellants contend that the issuance of an alias capias ad satisfaciendum was without authority and was improper. Ch. 110, Sec. 101.4, Ill. Rev. Stat. 1955 (Supreme Court Rule 4) provides as follows:

"(4) Whenever it appears from the return that a writ other than a summons has not been executed, the clerk shall issue successive alias writs on request."

In the case of In re Petition of Warnke, 207 Ill. App. 459, the court said, p. 461:

"We cannot agree with the contention that there is no warrant for the issuance of an *alias* writ of *capias ad satisfaciendum*. Section 4 of the Practice Act (J. & A. Sec. 8541) expressly authorizes the issuance of such an *alias* writ. (See also Section 64, Ch. 77, Rev. St., J. & A. Sec. 6811)."

We have gone as far back as Tidd's Practice (1856) Vol. 1, p. 129, where it is said that it was common practice to sue out alias and pluries capiases. There appears to be no basis for appellants' contention, save some language used in Pfeiffer v. French, 306 Ill. App. 326. There, the debtor was actually jailed on a writ of capias ad satisfaciendum. Thereafter, on a habeas corpus hearing he was discharged. Following this an

alias was issued. The issue, according to the first opinion of the court, was whether the debtor was discharged in the habeas corpus proceeding because of some formal nonobservance of procedural requirements, as the statute provided (ch. 65, Sec. 26, Ill. Rev. Stat. 1937). If so, a second or alias writ was proper. To understand that law, we must recall that for a time prior to its passage, habeas corpus had lost some of its halo because of its use to procure the freedom of convicted men on technical grounds, and the legislature passed the law in question to prevent that practice. The court held that the petitioner was discharged because of a formal nonobservance and that he could be imprisoned a second time, thus sustaining the issuance of the alias. The court then granted a rehearing. On the rehearing the majority opinion sustained the discharge of the debtor pursuant to habeas corpus because the judgment order upon which he had been imprisoned did not contain a finding that malice was the gist of the action, and that such a finding was necessary under the then recent ruling of Ingalls v. Raklios, 373 Ill. 404. Judge Burke, in a specially concurring opinion, elaborating on the question of the proper method by which a finding of malice could be shown and what made malice the gist of the action, said: "I do not know by what authority the Clerk has the right to issue an *alias* writ of *capias ad satisfaciendum*." He was there considering, as it clearly appears from the body of his opinion, the issuance of an alias after a debtor had been apprehended under the original capias, which is not the case here at all. The case of Pfeiffer v. French, supra, is not authority for relator's point. In our opinion, the alias in the instant case was properly issued.

The next point made by appellants is that the payment on March 7, 1956, was made too far in advance; that it should have been made on the date the

relator was committed to jail, and they argue that was at the time the sheriff took him into custody pursuant to the writ. Counsel put it this way to the trial court: When the deputy sheriff took him [the relator] to the sheriff's office and notified plaintiff's attorney—"that was the moment to pay the money [board money], not before." The statute in question provides that:

". . . it shall be the duty of the creditor . . . to pay the keeper of the jail or sheriff his fees for receiving such person, and his board for one week at the time the debtor is committed to jail and before the jailer shall be bound to receive the debtor. . . ." (Ill. Rev. Stat., Ch. 72, Sec. 29, Par. 30).

In Stroheim v. Deimel, 77 Fed. Rep. 802, the Circuit Court of Appeals, 7th Cir. (1897) had occasion to construe the Illinois statute on this question. In that case the creditor had paid two weeks board in advance. An order discharging the debtor was reversed and set aside and in a specially concurring opinion District Judge Bunn said, p. 808:

"I am willing to go as far as anyone in adopting a strict construction in favor of personal liberty, provided, always, that a remnant of propriety and good legal sense attend the decision. This provision of the statute was evidently intended as an indemnity to the jailer for the prisoner's board while in jail. . . . The circuit court held that a strict compliance with the statute required the board to be paid just a week in advance, and not more; and, because it was paid two weeks in advance, the prisoner was entitled to be discharged. I know of no decision, ancient or modern, English or American, adopting so strict a rule of construction, and a priori would never expect to find one, for it would seem beyond question that payment of the board two weeks or more in advance is not only a substantial, but a literal, compliance with the statute."

339

In Pfeiffer v. French, 306 Ill. App. 326, to which we have before referred, while the case was not ultimately decided on that point, the court did have occasion to consider the matter of payment which had been delayed, and said:

"If the phrase 'commencement of the week' were to be literally and strictly construed as claimed for, it would begin on Sunday and it would be difficult, if not impossible, to comply with such interpretation of the statute. And more strictly speaking, the 'week' would commence at midnight and such narrow construction of the language used would create a situation fraught with many obstacles. . . . We think a common-sense interpretation of this statute is that the payment of the money in advance, within a reasonable time, and the sheriff's willingness to accept the same, is all that is required by the statute."

We see no merit in appellants' contention.

█ The next point made by relator is that payment on March 29 was improper. That payment, he says, should have been made March 30. The trial court, in an excellent statement of the reasons for his decision, said with respect to this point:

"The relator says that the first week actually started on the 22nd of March because that was the date of his arrest. If that is true . . . then the payment on March 29th was proper because the first week would have elapsed and the second week would have started on that date. If the first week actually started on the 23rd, then the second week began on the 30th; and the defendant contends that the payment then should have been made on the 30th.

"The relator actually contends . . . the first week began on the 22nd, but . . . that the second week began on the 30th. If it did begin on the 29th, then the payment was actually made on the 29th; if it began

340

on the 30th [that being Good Friday, a legal holiday] payment could not have been made on any other day except upon a date prior or a day after the 30th; and if it were made after, it could be contrary to our statute."

We see no merit in relator's argument.

 The points we have discussed are highly technical, but we have given them careful consideration in view of the fact that imprisonment for debt is involved. We have kept in mind, however, that it is for the legislature to decide within what limits and under what circumstances imprisonment for debt should be imposed in a civil action. The legislature having decided, it is not for the courts to circumvent the policy so established by requiring over-meticulous compliance in matters of practice and procedure. Other points raised by the relator are even more technical than those we have discussed. We do not deem it necessary to consider them.

Orders affirmed.

ROBSON, P. J. and McCORMICK, J., concur.