# Edwin Fromm, Appellee, v. Herman Seyller, Appellant.

## Gen. No. 7,717.

1. EXECUTIONS—*what insolvent debtor must show to secure release from body execution.* A person in custody upon a writ of *capias ad satisfaciendum* after judgment in a tort action who petitions for release under the Insolvent Debtors' Act must show that malice was not the gist of the action.

2. EXECUTIONS—*determination whether malice was gist of action in seeking release from body execution.* In determining whether or not malice was the gist of an action for tort in which judgment was entered against the defendant and from custody under which he seeks release through the Insolvent Debtors' Act, the charge as laid in the declaration, the construction placed on the language thereof, and the finding of the jury thereon, must necessarily be considered.

3. EXECUTIONS—*what constitutes malicious injury within the meaning of the Insolvent Debtors' Act.* An injury, made the basis of a tort action, is malicious in the sense that one held as liable on judgment therein and attempting to secure release through the Insolvent Debtors' Act has committed it wantonly, wilfully, without cause, with knowledge and consciousness that injury must follow the act done.

4. EXECUTIONS—*declaration and verdict in tort action for personal injury showing malice as the gist of the action.* Under a declaration which charges a defendant with wilfully and wantonly driving his automobile to plaintiff's injury, and a verdict thereon which finds him liable for wanton and wilful negligence, held malice was the gist of the action, so that defendant could not secure release through the Insolvent Debtors' Act from imprisonment under the judgment.

5. EXECUTIONS—*what intent is not essential to show malice that will forbid release under the Insolvent Debtors' Act.* The malice which is meant by Cahill's St. ch. 72, ¶ 5, providing an insolvent debtor may secure release from imprisonment on a judgment in an action of which malice was not the gist, does not necessarily include the intent to malignantly produce an evil on a certain party, but signifies only the doing of an act which defendant knew was liable to injure others, regardless of consequence.

Appeal by defendant from the County Court of Peoria county; the Hon. GLEN J. CAMERON, Judge, presiding. Heard in this court at the October term, 1926. Reversed and remanded. Opinion filed August 8, 1927.

WALLACE J. BLACK, E. E. GALE and CLYDE M. WEST, for appellant.

VICTOR P. MICHEL, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This is an appeal prosecuted by Herman Seyller, appellant, from an order in a proceeding in the county court of Peoria county under the Insolvent Debtors' Act, Cahill's St. ch. 72, discharging Edwin Fromm, the petitioner. Herman Seyller, the respondent, obtained a judgment in the circuit court of Peoria county against the petitioner in the sum of $5,000, in an action for damages in which the respondent alleged in the third count of his declaration that the plaintiff on, to wit, the 16th day of February, A. D. 1925, at the hour of, to wit, 12.05 a. m., in the city of Peoria, county of Peoria and State of Illinois, was lawfully traversing and walking across a certain street or public thoroughfare in the city of Peoria aforesaid, to wit, a certain street known as South Adams Street, which extends from Main Street in a southerly direction past Oregon Street. And the defendant was then and there possessed of a certain automobile, to wit, a Studebaker, operated by him upon said South Adams Street and being driven by him in a southerly direction. And the plaintiff avers that while he was so traversing and walking across the said South Adams Street, at or near where the same intersects with one Garden Street in said city, and was using due care and caution and observing a proper regard for his own safety, the defendant did then and there wantonly, carelessly and negligently, and in utter disregard for the safety of others, drive and operate his automobile along and upon said street at the place aforesaid at a high and dangerous rate of speed, to wit, 40 to 50 miles per hour, in violation of the law of Illinois, and that said

defendant then and there wantonly and wilfully operated said car at such high and dangerous rate of speed and wantonly and wilfully disregarded the safety of the plaintiff and others using said street, and by reason of the wilful, careless and wanton negligence of the said defendant, the automobile operated by him struck the plaintiff and threw him with great force upon the street, and by means thereof the plaintiff was then and there bruised, hurt, wounded and became and was sick, sore, lame and disordered and so remained and continued for a long space of time, to wit, hitherto, during all of which time the plaintiff has undergone great pain and suffering, and because and by reason of said injury the plaintiff became and is permanently injured and maimed, etc.

There were three counts in the declaration. The first and second were withdrawn from the consideration of the jury and the case went to the jury upon the third count only. The jury found the defendant guilty and returned the following verdict: .

"We the jury find the defendant guilty and find the defendant guilty of wilful and wanton negligence and assess the plaintiff's damages at $5,000.00."

Judgment was rendered upon the verdict of the jury. The petitioner failed to pay the judgment and was arrested under a writ of *capias ad satisfaciendum* which was issued at the instance of the respondent. Thereupon the petitioner filed a petition in the county court asking to be discharged under section 2 of the Insolvent Debtors' Act, Cahill's St. ch. 72, ¶ 5, on the ground that malice was not the gist of the action in which the judgment for damages was obtained in the circuit court.

On the hearing in the county court the court had before it the record of the circuit court consisting of the declaration, the pleas and the verdict of the jury together with the judgment thereon. The following stipulation was also before the court:

"It is further stipulated between parties as follows: That the defendant was served with summons to appear for trial, at the January Term, 1926, of the Circuit Court of Peoria County, and was tried before a court and jury; and he plead a plea of general issue and a special plea denying ownership of the car and denying agency and denied driving the car at the time of this accident. That plea was filed by Edwin Fromm at the trial of the case, the special plea, filed January 19, 1926. And it is further stipulated that the suit was dismissed as to all defendants except Edwin Fromm."

It was also stipulated that no appeal was perfected and that the judgment is in full force and effect. The county court found that malice was not the gist of the action in the circuit court and discharged the petitioner.

The only question to be decided upon this appeal is whether malice was the gist of the action in the circuit court in the sense that the word malice is used in section 2 of the Insolvent Debtors' Act. Section 2 of said act, Cahill's St. ch. 72, ¶ 5, provides as follows:

"When any person is arrested or imprisoned upon any process issued for the purpose of holding such person to bail upon any indebtedness, or in any civil action when malice is not the gist of the action, or when any debtor is surrendered or committed to custody by his bail in any such action, or is arrested or imprisoned upon execution in any such action, such person may be released from such arrest or imprisonment upon complying with the provisions of this Act."

On the hearing on the petition it was incumbent upon the judgment debtor, the petitioner, to show that malice was not the gist of the action.

Where a petitioner under the Insolvent Debtors' Act, having been taken into custody upon a writ of *capias ad satisfaciendum* based upon a judgment against him in an action for tort, fails to show that malice was not the gist of the tort action he is not en-

titled to the release prayed for. *Fetz v. People,* 239 Ill. App. 250.

In determining the question whether or not malice was the gist of the action in the circuit court, we necessarily must keep in mind the charge as laid in the third count of the declaration, and the construction placed upon the language found therein, together with the finding of the jury.

A malicious injury is defined to be an injury committed wantonly, wilfully or without cause. *Rounds v. Detroit, L. & W. R. Co.,* 3 Hun (N. Y.) 329, 5 Thomp. & C. (N. Y.) 475–481; Words and Phrases, vol. 5, p. 4308.

In *Brown v. Illinois Terminal Co.,* 319 Ill. 326, at page 331, the court said:

"Courts have recognized the difficulty of accurately stating under what circumstances a defendant may be held guilty of wilful and wanton misconduct in causing an injury. Such conduct imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences. Ill-will is not a necessary element to establish the charge. Plaintiff and defendant had a legal right to pass over the highway crossing, and each was required, in doing so, to observe due regard for the legal right of the other. A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

Wilfulness and wantonness imports premeditation or knowledge and consciousness that injury will result from the act done. *Harris v. Piggly Wiggly Stores, Inc.,* 236 Ill. App. 392–396.

In discussing what constitutes malice in the case of the *First Nat. Bank of Flora v. Burkett,* 101 Ill. 391, the court at page 394 among other things said:

"In the case of *Harpham v. Whitney,* 77 Ill. 32, the case of *Mitchell v. Jenkins,* 5 B. & A. 594, was referred to as defining malice. It was there said by Parke, J., 'that the term "malice" in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus,* and as denoting that the party is actuated by improper and indirect motives.' That definition was applied in a case of malicious prosecution. The term has been defined: 'A formed design of doing mischief to another,'—'a wicked intention to do an injury to another.' Thus, the forsaking of a husband or wife of the other, without sufficient cause, is said to be malicious abandonment. Malicious mischief is the wanton or reckless destruction of or injury to property. It in some cases implies a wrong inflicted on another with an evil intent or purpose, and this is the sense in which it is employed in this statute. It requires the intentional perpetration of an injury or wrong on another. The wrong and intention to commit the injury are necessary to deprive the party of the right to a discharge from arrest or imprisonment. In this case there was an intentional wrong, little, if anything, short of a criminal act, and it was malicious, in the statutory sense."

The third count of the declaration charges a tort of greater culpability than what is known as common-law negligence. It charges a tort amounting to an assault to commit a bodily injury. It charges a wanton and wilful violation of the law.

In *People v. Glasebrook,* 320 Ill. 567, the defendant was convicted of manslaughter. The killing was caused by an automobile driven by the defendant on a public street in the city of Chicago. It was conceded by the defendant that he was guilty of negligence but

that it was not such negligence as would make him criminally liable. In the decision of the case the court among other things said:

"Counsel for defendant do not deny negligence on his part, but their contention is that it was not such negligence as the law requires to make him criminally liable. The law upon this subject, as applied to drivers of automobiles, has been discussed in *People v. Falkovitch,* 280 Ill. 321, *People v. Adams,* 289 id. 339, *People v. Camberis,* 297 id. 455, *People v. Schwartz,* 298 id. 218, and *People v. Anderson,* 310 id. 389, and it is unnecessary to here enter upon a further discussion of the question. It is not required that the driver of an automobile, to be held criminally liable, shall knowingly, intentionally and recklessly drive his car against the foot-passenger. It is his duty to regard safety regulations provided by law and also conditions existing at the place where the injury occurs. Others than the driver have a right to be on the street as well as he."

In *People v. Schwartz,* 298 Ill. 218, the defendant was found guilty and sentenced to the penitentiary. He was indicted for manslaughter and was charged in the indictment with unlawfully, wilfully and feloniously running an automobile over the deceased at a crossing on a public street in Chicago. In its opinion at page 221 the court said:

"It is clear that upon this record it was a question of fact for the jury to determine whether the defendant was guilty of that wanton and wilful disregard of the safety of the public which amounts to criminal negligence. The Motor Vehicle act declares a greater rate of speed than fifteen miles an hour in a residence district *prima facie* evidence of negligence. The plaintiff in error himself estimates his speed at twenty miles an hour. This is thirty feet a second, and it was a question for the jury whether such a rate of speed, together with a failure to keep such a lookout as would

enable the driver to see persons crossing the street lighted as was this street, was under all the circumstances criminal.''

If the plaintiff proved his case as laid in the third count of the declaration the defendant is guilty of a violation of the law. In view of the finding of the jury it is fair to presume that the plaintiff proved his case as charged in the third count of the declaration.

From the pleadings and the finding of the jury, it is clear to our minds that the petitioner was guilty of such conduct as to make him criminally liable, and it necessarily follows that he was guilty of a tort of greater culpability than common-law negligence. Furthermore, since wantonness implies wilfulness, the verdict of the jury is equivalent to a finding that the petitioner was guilty of wilful misconduct and should be so interpreted.

In *United States v. Reed,* 86 Fed. 308, the court in discussing what constitutes malice, at page 312, said:

''By 'malice' is not necessarily meant in the law a malignant spirit, a malignant intention to produce a particular evil. If a man intentionally does a wrongful act, an act which he knows is likely to injure another, that in law is malice; it is the wilful purpose, the wilful doing of an act which he knows is liable to injure another, regardless of the consequences. That is malice, although the man may not have had a specific intention to hurt a particular individual, or crew. So, if a man wilfully neglects a known obligation, with the same reckless disregard of the consequences, that is malicious conduct in the sense of the law.''

We conclude, therefore, that the petitioner failed to show that malice was not the gist of the tort action.

The order and judgment of the county court releasing and discharging the petitioner is reversed and the cause remanded.

*Reversed and remanded.*