130 So.2d 649

**Adrast DUCOTE, d/b/a Orleans Tile Works**

**v.**

**UNITED STATES FIDELITY & GUARANTY CO.**

No. 45484.

May 29, 1961.

Gertler, Hart & Duran, New Orleans, for plaintiff-appellant.

Montgomery, Barnett, Brown & Read, New Orleans, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, Adrast Ducote, doing business as Orleans Tile Works, brought suit against his insurer, defendant United States Fidelity & Guaranty Co., to recover $656.45, the cost of repairing a truck insured under a comprehensive liability policy issued to the plaintiff by the defendant. The answer denied liability under the policy because of certain exclusion clauses. The judgment of the lower court, in favor of plaintiff, was reversed on appeal to the Fourth Circuit Court of Appeal and the plaintiff's suit dismissed at his cost. See 125 So.2d 176. The case is now before us for review on certiorari granted upon plaintiff's application.

The facts as found by the Court of Appeal and which are not in dispute are that plaintiff during a short period of time permitted his employee Lamar Franklin, whose duties included those of warehouseman and truck driver, to keep the truck he customarily drove at his home overnight and on week-ends as a convenience of transportation, but the privilege was withdrawn following discovery that the employee had been using the vehicle for his own pleasure; the truck was thereafter left at the warehouse when not in business use and the employee was forbidden to drive it except during business hours and for business purposes. On a subsequent Saturday night in March, 1958, when the business was closed for the week-end, the employee used his key to enter the building in which the truck was kept and departed with it on a venture of his own; he was intoxicated at the time and later ran into the back of a parked vehicle causing the damage to the truck for which recovery is sought herein.[1] His arrest followed, and on arraignment he pleaded guilty to the criminal charges of unauthorized use of movables, operating a vehicle while intoxicated, and reckless operation of a vehicle.

Under the policy of insurance relied upon, comprehensive coverage applied to loss or damage to the automobile except by collision or upset, but including fire, theft and windstorm, with special declaration that loss occasioned by certain perils, among which are "malicious mischief or vandalism * * * shall not be deemed loss caused by collision or upset." (Coverage E)[2] The plaintiff did not carry col-

1. The damage caused to the other car has been paid under a pertinent provision of the policy and we are not concerned therewith.

2. Coverage E, headed "Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset," declares in its entirety: "To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass or loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

lision insurance because of the high rate but if, as he contends, the loss in the instant case could be said to have been occasioned by theft, vandalism or malicious mischief, since none of these would constitute collision, the policy would cover the loss.

The Court of Appeal ruled out theft, since there was no intent on the part of the employee to permanently deprive the owner of the vehicle; and also rejected malicious mischief and vandalism, using the test of intent in weighing whether the damage to the truck was caused by those acts and concluding no evidence had been offered nor was any before the Court which would even suggest that the employee intended to damage or destroy the truck or that he drove it in a manner to indicate such intent.

Counsel for plaintiff assign as error that the Court of Appeal applied criminal law principles and concepts in this civil action ex contractu, despite the "great wealth" of jurisprudence cited to the Court which would have enabled it to decide the one issue of the case on civil law principles, and argue "It is true that this employee may not have had the specific intent to commit the crime of theft as defined by our State statutes,[3] but certainly his conduct was far outside the ordinary course of human conduct, and from these facts it could and should be concluded that there was present the general intent provided for in R.S. 14:10 [4] to commit the three crimes to which he pleaded guilty, and hence more than sufficient evidence to warrant recovery under the comprehensive coverage policy." As a further development of his argument, counsel submit that since the employee did, either with general criminal intent or through criminal negligence,[5] during the perpetration of the crimes to which he pleaded guilty, damage another's property, the damage inflicted under such circumstances should be considered to be either malicious mischief or vandalism; that in any event the employee's conduct in his reckless damage to the property of another

3. R.S. 14:67, defining Theft, declares that the "intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."

4. R.S. 14:10, found in the Criminal Code, declares: "Criminal intent may be specific or general: (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. (2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."

5. "Criminal negligence" according to R.S. 14:12 "exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."

was unconscionable and under rules of strict construction against the insurer and liberal construction in favor of the insured, in absence of a policy definition of malicious mischief and vandalism his actions should be held to constitute either one or the other, or both—for which insurance protection was afforded. Cited in support of the last proposition are Vol. 5A, Am.Juris. 62 et seq., Verbo Automobile Insurance, Secs. 64 and 65.

The fallacy of much of the argument rests on the inconsistency of the positions taken, for counsel, though protesting that criminal law principles are inapplicable to this civil action on a contract, himself invokes criminal law precepts (a) to supply intent or (b) to apply the test of the reasonably careful man—a test which, in its civil counterpart, is found in the "gross negligence" of tort law and the ensuing liability for consequences.[6]

■ There can be no serious contention that recovery can be had because the employee's acts constituted theft. As was aptly observed by the Court of Appeal in its opinion, all of the evidence, including the testimony of the errant employee who was called as a plaintiff witness, makes abundantly clear that there was no intent to permanently deprive the owner of the vehicle. Without such intent, under the well settled jurisprudence of this State, and in view of the widely accepted meaning of the term, there can be no recovery under the policy provisions insuring against theft.[7]

■ The word "malicious" is characterized by or involves malice; the word "malice" in common speech means ill will or a purpose to harm. Any unlawful act done wilfully and purposely to injure another is malicious as to that person.[8] And malicious mischief has been well defined as the wanton or reckless destruction of or injury to property, implying in some cases a wrong inflicted on another with an evil intent or purpose, or motivated by black and diabolical revenge.[9] It is therefore clear that the act in the case of malicious mischief must proceed from malice, and according to the general doctrine the malice is against the owner of the property, rather than against another person or the prop-

6. See Reporter's Comment under R.S. 14:-12, citing Restatement of the law of Torts (1934), Secs. 282–284, 500.

7. See cases cited in the opinion of the Court of Appeal, 125 So.2d at page 178; for definition of theft, see Wharton's Crim.Law (12th ed.) Sec. 1097; Bishop. Crim.Law (9th ed.) Sec. 566.

8. See Virginia Electric & Power Co. v. Wynne, 149 Va. 882, 141 S.E. 829, 834; Anderson v. International Harvester Co. of America, 104 Minn. 49, 116 N.W. 101, 16 L.R.A.,N.S., 440; Caverno v. Fellows, 300 Mass. 331, 15 N.E.2d 483; and numerous other definitions found in 26 Words and Phrases pp. 272–273, 300–301.

9. Rea v. Motors Ins. Corp., 48 N.M. 9, 144 P.2d 676; Fromm v. Seyller, 245 Ill.App. 392; and First National Bank of Flora v. Burkett, 101 Ill. 391, 40 Am. Rep. 209.

erty itself; it is the wilful injury to or destruction of property motivated by ill will or resentment toward the owner thereof.[10] Vandalism is a term of less definite meaning. Originally it signified the barbaric and ruthless destruction or spoilation of something venerable, artistic, or beautiful; the word vandal is generally employed as meaning a ruthless plunderer.[11] As used in the policy insuring against damage from such cause, we think the term refers to such wilful, wanton and ruthless acts as are intended to damage or destroy the property insured.[12]

We are unable to ascribe to the reckless operation of the vehicle by the intoxicated employee the elements necessary to constitute malicious mischief within the meaning and terms of the contract of insurance; and in the absence of an actual purpose or design to do injury, the conduct could not amount to vandalism as the term is to be understood. The policy itself, under its general comprehensive clause (Coverage E) expressly exempts "Collision of the automobile with another object," and in the following and distinct clause (Coverage F) provides protection for

"Collision or Upset" for those who want to purchase that type of insurance. The plaintiff elected not to insure against collision or upset, and he cannot prevail in this suit on a theory of malicious mischief or vandalism. That the contract of insurance is to be strictly resolved against the insurer is well settled, but where no ambiguity or uncertainty appears, no place is found for the operation of the rule.

The plaintiff strongly relies on statements found in legal texts to support his theory of the case; examination discloses that these are uniformly based on two cases, Unkelsbee v. Homestead Fire Ins. Co., D. C.Mun.App., 41 A.2d 168, and Great American Ins. Co. v. Dedmon, 260 Ala. 330, 70 So.2d 421, 43 A.L.R.2d 599. In the absence of a pronouncement of this court on the subject these authorities at most would be persuasive. However, since we do not choose to follow them, no useful purpose would be served by discussion of our appreciation of the legal basis for the results.

For the reasons assigned, the judgment of the Court of Appeal reversing the judgment of the District Court and dismissing plaintiff's suit is reinstated and affirmed.

---

10. Romanych v. Liverpool and London and Globe Ins. Co., 8 Misc.2d 269, 167 N.Y.S. 2d 398, presented a clear example of malicious mischief; it was there held that the acts of defaulting purchasers of certain buildings in systematically destroying and removing fixtures, breaking windows and frames, and committing similar depredations, with deliberate intent to injure the vendor and avenge purchasers' ejectment, constituted malicious mischief within terms of a policy insuring the property against that peril.

11. New Standard Dictionary; 91 C.J.S. 802.

12. See Rich v. United Mut. Fire Ins. Co., 328 Mass. 133, 102 N.E.2d 431, 432; DeAgostina v. Holmden, 157 Misc. 819, 826, 285 N.Y.S. 909.