142 So.2d 580 (1962)
LANZA ENTERPRISES, INC., Plaintiff-Appellee,
v.
CONTINENTAL INSURANCE COMPANY, Defendant-Appellant.
No. 584.
Court of Appeal of Louisiana, Third Circuit.
June 13, 1962.
Rehearing Denied July 5, 1962.
*581 Bienvenu & Culver, by P. A. Bienvenu, New Orleans, for defendant-appellant.
Joe J. Tritico, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGÉ, and CULPEPPER, JJ.
TATE, Judge.
By this suit the plaintiff contractor seeks to recover certain water damages caused to a building under construction by it. Made defendant is the plaintiff's insurer under a policy covering loss to the insured premises resulting from "Vandalism and Malicious Mischief".
The defendant insurer appeals from judgment awarding the plaintiff the stipulated damages of some thirteen thousand dollars. The sole question of the present appeal concerns whether the plaintiff has proved that the damages in question were caused by "vandalism and malicious mischief" so as to be within the coverage of the policy issued to it by the defendant.[1]
As defined in the policy issued by the defendant-insurer covering loss so caused, "The term `Vandalism and Malicious Mischief' as used herein is restricted to and includes only willful or malicious physical injury to or destruction of the described property." In general, the terms "vandalism" and "malicious mischief" refer to wanton or malicious acts intended to damage or to destroy property. See: 5 Appleman, Insurance Law and Practice, 1961 pocket part, Section 3216.5, p. 62: 26 Words & Phrases, (Supplement) verbo "malicious mischief"; 44 Words & Phrases, (Supplement) verbo "vandalism". Thus, to recover under a policy assuring against loss caused by vandalism and malicious mischief, the plaintiff must show by a preponderance of the evidence, direct or (see below) circumstantial, that the damage was caused by acts intended to damage the property in question.
The evidence shows the following: During the construction, it was necessary to grind and lay terrazzo floors on the fourth floor of the building. In this connection, it was necessary to have water available up there. Therefore, a hose was attached to a faucet on the outside of the building near the ground, which hose led up into the building through a vent in the fourth floor; the water would be turned on and off as wanted by an employee on the ground, per the instructions of an employee on the fourth floor.
On Saturday, October 5, 1959, the employees quit work for the weekend. Those on the terrazzo tile project testified positively that they had completely closed off the faucet and had checked that no water was running when they left that day. However, when the workers returned to the job at 6 A.M. on Monday, October 7, the faucet had been turned on full force at some time during the weekend and had been left running. It had flooded the building from the fourth floor down and had caused considerable damage thereto.
A five- or six-foot chain-link fence, with three barbed wire strands at the top, surrounded the grounds on which the construction project was located. The gates to the fence were securely locked. Nevertheless, during the weekend a witness had seen three boys, aged 10 to 13 years, inside of the fence and in the construction lot near the building.
Able counsel for the defendant-appellant contends that: (1) In order to re *582 cover for loss by vandalism and malicious mischief, the insured must show that the destructive acts were motivated by malice against the owner himself of the property; and (2) The insured must, in any event, establish the specific intent to damage the property, so that it is not possible to presume such intention on the part of an unknown and unapprehended person. Counsel points out that there is no evidence in the record to establish how the faucet was opened over the weekend or as to who had opened it.
In support of its first contention, the defendant-appellant cites Ducote v. U.S.F. & G. Co., 241 La. 677, 130 So.2d 649. This case held that damages caused by gross negligence were not insured under a vandalism and malicious mischief coverage. The court there held that such coverage applied only to losses resulting from the intentional damaging of property, and did not apply to those resulting from the merely negligent damaging thereof. We do not interpret the cited decision as intending to exclude recovery for the malicious destruction of property unless it be proved that the malice was directed against the property's owner personally.
As to defendant-appellant's second contention, we cannot agree that direct proof must be produced of the specific intention to damage the property.
Ordinarily, destruction by acts of vandalism are not committed in the open view of witnesses by those intending to be identified and apprehended. To hold that circumstantial evidence cannot be used to prove the intentional destruction of the property would, in most instances, defeat the intended object of securing insurance against loss by vandalism; and we can find no authority holding that intentional destruction of property cannot be proved by circumstantial evidence, but must instead be proved only by direct evidence. (Rich v. United Mut. Fire Ins. Co., 328 Mass. 133, 102 N.E.2d 131, 1951, relied upon by appellant, holds only that the circumstantial evidence therein did not preponderantly prove that the act which caused the damage was done intentionally rather than merely negligently.)
Under our jurisprudence, a party "relying upon circumstantial evidence is required to produce evidence which excludes, with a fair amount of certainty, every other reasonable hypothesis but the one relied on," O'Pry v. City of Opelousas, La.App. 3 Cir., 124 So.2d 333, 335; Sollberger v. Walcott, La.App. 1 Cir., 101 So. 2d 483; Holder v. Lockwood, La.App. 2 Cir., 92 So.2d 768; Gomez v. Granberry, La.App. 1 Cir., 89 So.2d 454; Bickham v. Wax Lumber Co., La.App. 1 Cir., 84 So.2d 60.
The trial court correctly held, in our opinion, that the plaintiff had preponderantly proved by circumstantial evidence that the damages were caused by acts intended to damage the property.
The uncontradicted evidence, accepted as correct by the trial court, excluded any negligence of the job-employees as the cause of the damages. On the other hand, the person or persons who were sufficiently skilled to get over or under the high fence and into the construction premises, must have intended damage to the building by turning on the water full force into the hose leading into it, so as to permit the water's unrestricted flow while the premises were deserted over the weekend. It took a deliberate act to turn on the faucet, and under such circumstances the deliberately turning and leaving the water on full force (which would obviously cause damage), evidenced the deliberate intention to damage the building.
As stated by our learned trial brother: "* * * Some unauthorized person, between late Saturday afternoon, October 3, 1959, and Monday morning, October 5, 1959, did enter upon these premises and open the water valve to which this hose *583 was connected, which hose was in plain view, leading up to the fourth floor and inside the building. Any person who opened the valve under the circumstances of this case, from the very young to the oldest, would know that the natural, logical, necessary and probable consequences of this act would be water damage to the building. The Court finds that the intention [to damage the property] of a person committing such an act under these particular circumstances can be presumed. Thus, this Court concludes that the plaintiff has discharged the burden of proof in this matter and has established the elements necessary to invoke the `vandalism and malicious mischief clause of the insurance contract issued by the defendant herein."
For the foregoing reasons the judgment of the trial court is affirmed at the cost of the defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] We have previously affirmed the dismissal of a third-party demand asserted by the defendant insurer against another company. La.App., 129 So.2d 91. Not involved in the present appeal is an intervention filed by the Louisiana State Building Authority, which the trial court did not pass on because no evidence was presented as to the interest of the intervenor in the outcome of this suit. (This state agency had let the construction project to the plaintiff contractor.)