STOKER, Judge.
Plaintiff homeowners seek to recover for alleged insured losses to a house owned by them under a vandalism and malicious mischief endorsement to a homeowner’s policy. Some of the loss consists of appliances or equipment attached to the house which were taken from the house and which have not been found. The basic policy provides no coverage for theft of items from the insured premises. ' The primary issue in this case is whether the detachment and removal of items from the house structure is a covered loss under the vandalism and malicious mischief endorsement of the insurance policy.
Another issue consists of the amount of recovery plaintiffs should have. (Plaintiffs are entitled to some recovery in any event, as some damages done to the premises clearly were caused by acts of vandalism and malicious mischief.) A final issue is whether plaintiffs are entitled to penalties and attorney’s fees.
*711 The trial court’s reasons for judgment do not make any ruling on the primary issue, but the trial court did hold that plaintiffs were entitled to $1500 in “damages.” Penalties and attorney’s fees were denied.
FACTS
Plaintiffs owned a residence building at 800 Lafitte Drive in Alexandria, Louisiana, which they rented to tenants. The building was unfurnished but was equipped with a gas fueled kitchen range. It was centrally heated and air-conditioned. Plaintiffs’ tenants vacated the premises by February 14, 1982, and plaintiffs inspected the premises on that day and found them to be in excellent condition. Thereafter the house was broken into on three separate occasions, March 7, March 9 and April 18, 1982. On the three occasions parties unknown committed acts of vandalism including soiling carpets and marking or writing on walls. Light fixtures were torn and removed from the premises and in at least one instance a fixture was left hanging as if the parties had abandoned the attempt to remove the fixture. The hood over the kitchen range was badly damaged. Various other acts of vandalism causing damage could be cata-logued.
In addition to light fixtures taken, the unknown parties also took the air-conditioner compressor, the kitchen range, and ripped up a certain amount of carpeting which was carried away. A number of smaller items were taken. None of the items taken from the premises were ever found.
Plaintiffs’ rent house was insured by defendant Audubon Insurance Company (Audubon) for fire and other perils but the policy did not insure theft from the premises. The policy contained an endorsement to cover losses resulting from vandalism and malicious mischief. The provisions of this endorsement pertinent here are:
“B. The perils of Vandalism and Malicious Mischief, as defined and limited herein, are added to and made a part of the ‘Perils Insured Against’ section of the form(s) of which this endorsement is made a part.
“C. Loss by vandalism or malicious mischief shall mean only the willful and malicious damage to or destruction of the property covered. The Company shall not be liable, as respects, these perils, for any loss:

“2. By pilferage, theft, burglary or larceny, except that this Company shall be liable for willful damage to the building(s) covered hereunder caused by burglars; ...”
Audubon concluded that plaintiffs’ insured loss, as defined and limited, amounted to $695.40. After applying deductibles amounting to $200, Audubon sent plaintiffs a draft or check for $495.40. Audubon took the position that it was liable for damage to the building but not for replacement of items completely removed from the building. It regarded items removed from the building as subjects of theft or burglary and as excluded losses under the endorsement for vandalism and malicious mischief.
Plaintiffs brought this suit for the amount of all of their loss, taking the position that removal of items attached to the building constituted damage to the building. Generally the items carried away were detached with some force and violence. The air-conditioner compresser was on a concrete slab base outside of the house. Tubing running into the equipment inside the house was cut in the process of removing the compressor from the base.
TRIAL COURT ACTION
The basis for the trial court’s award of $1500 is not at all clear. In the trial court’s brief reasons for judgment it stated:
“A strict and literal interpretation of the policy provisions would clearly support the provisions (sic) taken by the defendant. On the other hand, it is understandable that the plaintiffs feel that they should have more protection under their insurance policy.
*712 “The tender of $495.40 appears to be adequate for the specific items reflected in that aspect of the coverage. The Court feels inclined to give some relief to the plaintiffs in the form of damages occasioned by the vandalism, and awards the amount of FIFTEEN HUNDRED ($1500.00) DOLLARS.”
MATTERS ON APPEAL
The plaintiffs appealed the trial court’s judgment and urge on appeal (1) that the award is grossly inadequate (2) and that the trial court erred in not awarding penalties and attorney’s fees. The appellee, Audubon, answered the appeal and asserted that the award of $1500 was “incorrect as a matter of law.” Audubon prayed that the judgment be reversed and set aside and dismissed at plaintiffs’ costs.
INSURANCE COVERAGE
The basic policy in question here provides insurance for fire and lightning and extended coverage. No coverage is provided for theft, burglary or pilferage. By endorsement, coverage for vandalism and malicious mischief is added, the provisions of which are quoted above.
Preliminarily we note that before there can be a recovery for either vandalism or malicious mischief it must be shown that there was an actual purpose or design, an intent, to injure, damage or destroy. Ducote v. United States Fidelity & Guaranty Co., 241 La. 677, 130 So.2d 649 (1961); Thomas v. Pennsylvania Fire Insurance Company, 163 So.2d 202 (La.App. 4th Cir. 1964), writ refused, 246 La. 583, 165 So.2d 481 (1964) and Lanza Enterprises, Inc. v. Continental Insurance Co., 142 So.2d 580 (La.App. 3rd Cir.1962). Thus, intent becomes a key factor in an action to recover for loss through alleged acts of vandalism or malicious mischief.
In the Lanza case two significant holdings were announced. First, it was held that an insured is not required to show that destructive acts were motivated by malice against the property owner himself in order for an owner to recover against the insurer. Second, it was held that in suits for recovery of loss under a vandalism and malicious mischief policy, direct proof of intention to damage property is not required; such intention may be established by circumstantial evidence. Although the Lanza case establishes a broad and liberal test for determining intention, it is of little help to plaintiffs as insureds in this case because no taking or theft was involved in Lanza.
In Lanz.a this court of appeal, affirming the trial court, was faced with these facts. Over a week-end unknown parties entered a building under construction and turned on a water hose which led up to the fourth floor of the building for temporary use in laying terrazzo tile floors. The water was left running and damaged the building through flooding of the floors beneath the fourth floor. This Court concluded that, since the unknown parties who turned on the water and left it running would know the probable consequences of their act, the intention to cause damage to the building could be presumed.
In Ducote v. USF & G Co., supra, the Louisiana Supreme Court held that damage to a motor vehicle resulting from the operator’s negligence did not constitute vandalism or malicious mischief within insurance coverage for losses sustained in a vehicular collision. In Ducote the Supreme Court held that intentional damage was required as opposed to negligently caused damage.
Beyond the general principles of law announced in Ducote and Lanza, these two cases are not factually apposite to the case of Mr. and Mrs. Sterling before us. The facts of this case bear some similarity to Thomas v. Pennsylvania Fire Insurance Company, supra. In Thomas the insured owner sought to recover the replacement value of a bulldozer blade and the cost of repairing damage to the radiator core of a D-7 caterpillar tractor. There was no evidence as to how and by whose action the bulldozer blade came to be missing. The Court of Appeal for the Fourth Circuit concluded there was no evidence that any intent, purpose or design to commit vandalism or malicious mischief was involved in the loss of the blade or the damage to the radiator. (The blade was approximately 10 *713 feet in width, 3 or 3½ feet in height and weighed about 4,000 pounds.)
In Thomas the policy of the insurer provided insurance coverage against loss or damage directly caused by theft, vandalism or malicious mischief but did not cover mysterious disappearance. After concluding that Thomas could not recover under the vandalism or malicious mischief provisions of the policy, the court concluded that he could recover under the theft provision. In concluding that a theft had occurred the court said in part:
“A recovery by the plaintiff can only be had under the policy provision relative to theft. That insured peril includes an intent to permanently deprive the owner of the blade. Ducote v. United States Fidelity & Guaranty Co., supra.
“We are of the opinion that the facts proved by the plaintiff, as found by the trial court are sufficient to establish that the loss of the blade was occasioned by theft. Considering all of the circumstances no other conclusion is tenable. The size and weight of the blade negative any possibility of misplacement, disappearance or simple loss in the usual sense. It had to be removed by a human agency which not only intended to remove it from the tractor and take it away but was also prepared with the equipment necessary for the accomplishment of that purpose. The fact that the blade has never been found is, under the circumstances peculiar to this case, a sufficient indication that it was removed and taken away with the intention of permanently depriving the owner of the same.”
In the case before us it might very well be that the issue of recovery for the items taken from plaintiffs’ house could be decided on the basis of the absence of any manifest intent in taking these items to vandalize or do malicious mischief. Certainly considerable effort and power (manpower, machine power or both) was required to detach and carry away such items as the air-conditioner compressor and the kitchen range. Considerable effort was evidently involved in ripping up carpeting in two rooms and transporting it away. Tearing out light fixtures may require less effort, but to do so and carry items away is indicative of some fixed purpose more consistent with theft than, vandalism or malicious mischief.
Admittedly, the parties who entered on the three occasions did commit pure acts of vandalism. Consequently, there may have been mixed motives. Nevertheless, there is no evidence to show that the same parties acted on each occasion or that the parties who carried away items were the same who committed the undisputed acts of vandalism. If the same parties were involved throughout, there is a question as to whether vandalism may have been merely incidental to a purpose to commit theft. They may have been committed as separate acts.
The defendant Audubon admits that it is liable for certain items or things in the premises damaged but not removed. Audubon denies that it is liable for the replacement value of items completely removed from the premises.
Despite the possibility that we might pitch our decision on the question of intent, we decline to do so. In their briefs the parties have focused on the meaning of the policy endorsement providing coverage for vandalism and malicious mischief. As we think the legal issue of coverage can be decided on the basis of the policy language, we consider it important that we do so.
INTERPRETATION OF ENDORSEMENT LANGUAGE
Apparently no Louisiana case has considered language such as that quoted above which provides insurance against loss from vandalism or malicious mischief. Of the cases from other states cited in the briefs of the parties we find only three have actually considered such language in a context of facts similar to those involved here. Plaintiffs rely on one Kentucky case and one Texas case. State Automobile Mutual Insurance Co. v. Trautwein, 414 S.W.2d 587 (Ky.1967) and United States Fidelity & Guaranty Co. v. Bimco Iron and Metal Corp., 464 S.W.2d 353 (Tex. *714 1971). Defendant relies on the California case of Pryor v. State Farm Fire & Cas. Co., 74 Cal.App.3d 183, 141 Cal.Rptr. 394 (5th Dist.1977). Each of these cases construe provisions the same, or quite similar to, those involved in the Audubon policy.
In the Kentucky case, vandals or thieves forceably entered three newly constructed unoccupied apartments owned by Traut-wein and entered a fourth which had been rented, the entrance door of which was not locked. A person or persons whose identity was never discovered removed air conditioning units permanently installed in each apartment unit. The air conditioning units were installed in openings in the walls and could not be removed without damage to the building. The Kentucky court found coverage for all Trautwein’s damages, including the replacement value of the air conditioners taken. The Kentucky court stated: “There can be no doubt that theft was the purpose of the burglars and that they did steal the property of the insured. It is equally certain that the insured realty, of which the air conditioners were integral parts, was damaged in the process.”
In Trautwein, the Kentucky court theorized that taking the units damaged the building and since it occurred during a burglary, the loss was covered. The language construed was as follows:
“2. The term ‘Vandalism and Malicious Mischief as used herein is restricted to and includes only wilful and malicious physical injury to or destruction of the described property.
“3. When this endorsement is attached to a policy covering direct loss to the described property, this Company shall not be liable under this endorsement for any loss
“(a) * * *
“(b) by pilferage, theft, burglary or larceny, except loss by wilful and malicious physical injury to or destruction of a building described and insured hereunder.”
In the Bimco Iron and Metal Corporation case, the Supreme Court of Texas split with reference to the rationale for recovery where burglars entered the insured plaintiff's warehouse, dismantled the electrical system and removed high voltage wiring and transformers. The majority allowed recovery under a restricted or narrow construction of policy language. Relative to the policy issued to Bimco the Texas Supreme Court stated:
“Attached to the policy was the vandalism and malicious mischief endorsement. The relevant portions of the vandalism and malicious mischief endorsement provide (emphasis ours):
“ ‘1. In consideration of $10.00 (Inch) premium and subject to the provisions of this policy and this endorsement, the liability of this Company hereunder for loss or damage resulting from the peril of Riot and Civil Commotion is hereby extended to include loss caused by damage to or destruction of the property described by Vandalism and Malicious Mischief, including damage to the building(s) covered hereunder caused by burglars.
“ ‘2. The term “Vandalism and Malicious Mischief” as used herein is restricted to and includes only willful or malicious physical injury to or destruction of the described property.
“ ‘3. When this endorsement is attached to a policy covering direct loss to the described property, this Company shall not be liable under this endorsement for any loss:

“ ‘(b) by pilferage, theft, burglary or larceny.
⅝ ⅜ ⅜ * * * ) >)
The majority concluded that if paragraph 1 quoted above covered the loss, and if paragraph 3(b) took it away, the insurance contract was ambiguous. Therefore, the contract should be construed liberally in favor of the insured and strictly against the insurer. However, the court majority concluded there was no ambiguity by interpreting paragraph 3(b) to apply only to personal property stolen from the warehouse, such as tools, gauges and miscellaneous materials.
*715 In Bimco four justices, including the Chief Justice, concurred, disagreeing entirely with the rationale of the majority. The author of the concurring opinion (in which the other justices joined) disagreed with the majority opinion insofar as it held “that Bimco was insured against the loss by theft of copper wiring and transformers not shown to have been damaged in the burglary.” The concurring justices found no ambiguity in the provisions of the policy endorsement relative to vandalism and malicious mischief. They were of the opinion that theft was not covered. The concurring justices nevertheless thought that the endorsement covered direct damage or destruction to the building itself caused by burglars and the recovery was measured by the “cost of labor and materials required to restore the damage to the building itself.” The concurring opinion seems to hold that theft itself as a bare proposition is not a covered loss, but insofar as burglary caused damage to an insured building (albeit by theft), the cost of repair was covered.
In Pryor v. State Farm Fire & Cas. Co., supra, a California Court of Appeal came to an entirely different conclusion from Trautwein and Bimco after considering both opinions. In Pryor the plaintiffs commenced construction of three houses for sale. When the houses were being readied for placement on the market unknown persons broke into each of the houses. They disconnected and removed the major built-in appliances, took up the carpeting, and removed various light fixtures and mirrors. The policy endorsement provisions providing vandalism and malicious mischief coverage were virtually identical to those contained in Audubon’s endorsement to the Sterlings’ policy. Apparently three separate policies with endorsements were issued the plaintiffs in Pryor.
In Pryor the California court said:
“The pertinent language of the insurance (identical in all three policies) is:
‘This policy is extended to insure against loss by the following perils as hereinafter provided, only when premium for extended coverage and vandalism and malicious mischief is inserted in the space provided on the first page of this policy or endorsed hereon.
‘9. VANDALISM AND MALICIOUS MISCHIEF meaning only willful and malicious damage to or destruction of the property covered hereunder.
‘THIS COMPANY SHALL NOT BE LIABLE FOR LOSS:
‘(a) * * *
‘(b) ***
‘(c) By pilferage, theft, burglary or larceny, except that this company shall be liable for willful damage to the building(s) covered hereunder caused by burglars.
‘(d) * * *
‘(e) * * *
“The trial judge awarded damages only in the sum of $46.20 for willful damage by the burglars. The court held that the removal of the items came within the definition of pilferage, theft, burglary and larceny and were, therefore, not recoverable under the policy. The correctness of the trial court’s interpretation is the sole issue before us.
“[1] We hold that the taking of built-in appliances and carpeting constituted theft under the terms of the policy. However, we reverse for retrial solely on the amount of damages suffered by the appellant by reason of the removal.
“The clause in question is an extended coverage endorsement to the standard fire contract. The endorsement extended the fire policy to include coverage for vandalism and malicious mischief. Vandalism and malicious mischief are usually defined as willful and malicious damage to, or destruction of, the described property. Historically, the words malicious mischief were added because a dictionary definition often limited vandalism to the willful destruction of a thing of beauty (Unkelsbee v. Homestead Fire Insurance Co. (1945), D.C.Mun.App., 41 A.2d 168, 170; Annot. (1969) 23 A.L.R.3d 1259, 1263; Huebner, Black, Cline, Property *716 and Liability Insurance (1976) (2d ed.) pp. 132-133).”
“The language in the three policies excludes loss by pilfering, theft, burglary, or larceny, but covers damages brought about by burglars. The trial court determined that this was clear and unambiguous; therefore, plaintiff could not recover for either the theft of the items removed from the houses or the labor costs incurred in installing replacements. Appellants contend that the act of removing the items from the houses constituted damage to the houses themselves. Consequently, they believe that they are covered under the policy. Respondent states that no structural damage was done to the houses; hence, only a theft occurred, and since theft is explicitly excluded from coverage, appellants have no claim.”
The California court then referred to the Trautwein and Bimco cases and stated that it was not persuaded by the ratio decidendi of those cases. (As to Bimco the California court referred to the opinion in the Texas Court of Civil Appeals, 455 S.W.2d 828, rather than the Texas Supreme Court opinion in Bimco.) The California court found no ambiguity in the policy language and held that “the clause in the policies in this case is clear on its face— replacement cost of the stolen items is not compensable.” And further: “We decline to follow the holdings of Trautwein and Bimco as to replacement costs.”
Although it rejected the cost of replacement concept, the California court held that damage to the houses caused by removing the items was covered under the policies. It held that the trial court erred in not allowing recovery against the insurer for the labor costs incurred in reinstalling the replacement items. For another opinion involving similar policy language in which coverage was found for damage caused by vandals, but not for items taken from the insured property, see Theo v. National Union Fire Insurance Company, 90 Ga.App. 342, 109 S.E.2d 53 (1959).
After considering the wisdom set forth in the three cases from Kentucky, Texas (majority and concurring opinion), and California, we consider that the interpretation given by the California court in Pryor v. State Farm Fire & Cas. Co. to represent the correct interpretation of the policy endorsement language under consideration by us. As we see the matter, there would be no coverage at all were it not for the addition of the language “except that this Company [Audubon] shall be liable for willful damage to the building(s) covered hereunder caused by burglars.” In other words, a theft or burglary is a theft or burglary and is excluded from coverage insofar as replacement cost of the stolen items is concerned. Because of the added language allowing coverage for damage caused by burglars, the insureds are entitled to the cost necessary to install replacement items but not the costs of the items themselves.
In Pryor the California court stated:
“The correct measure of damages in this case is the installation costs after new appliances, carpeting, and light fixtures have been purchased. Therefore, we conclude that the trial court erred in not construing the policies in the broadest way possible for the appellant so as to allow recovery against respondent for the labor costs incurred in reinstalling the items.”
The paragraph preceding the above makes it clear, however, that incidental damage done by burglars in the act of removing stolen property is also covered.
DETERMINATION OF AMOUNT OF RECOVERY
The trial court’s conclusion that plaintiffs are entitled to recovery “in the form of damages” is clearly wrong. This present suit is a suit on an insurance contract and is neither a suit for damages for breach of contract nor damages in tort. The written reasons for judgment are also unclear, if not inconsistent, in that the trial court first states the tender of $495.40 “appears to be adequate for the specific items reflected in that aspect of the cover *717 age” and then awards $1500 in damages. Under the circumstances, we must consider the record to determine ourselves what amount plaintiffs are entitled to recover consistent with our interpretation of the endorsement covering vandalism and malicious mischief as outlined above.
Exclusive of their claim for lost rent, plaintiffs’ claims are set forth on Plaintiffs’ Exhibit No. 5, a copy of which was submitted by them at the time they made their insurance claim. It was used by the insurance adjusters in considering and processing the claim and their copy was introduced as Defendant’s Exhibit No. 2. Because it will be necessary to discuss individual items, we set forth in its entirety Plaintiffs’ Exhibit No. 5. It reads:
“Summary of Replacement and Repair Estimates
800 Lafitte Street
Alexandria, Louisiana
1. Replacement and installation of A/C Compressor. $1109.00 Carrier #38EB036
Air Conditioning Appliance Corporation
1901 Lee
Alexandria, Louisiana 71301
2. Replacement and installation of carpeting. $ 961.03
44.18 Square Yards at $17.95/sq. yd.
Clark-Dunbar
3600 Jackson
Alexandria, Louisiana 71301
3. Replacement and installation of kitchen range. $ 600.55
Kenmore range #72424
Sears and Roebuck Co.
3401 Masonic Drive
Alexandria, Louisiana 71301
4. Replacement of window screen. $ 14.70
.74 (tax)
31" X 51⅝⅛" aluminum frame, fiberglass screen
Lemoine’s Blind and Awning
1712 Van Street
Alexandria, Louisiana 71301
5. Replace 5 window panes
Paint one wall and touch-up paint in front bedroom
Finish and install bi-fold closet doors in master bedroom
Repair range vent hood. $ 55.00
10.00 (estimated fee)
3.25 (tax)
Total $ 68.25
6. Strip and refinish kitchen-dining and living room and hallway floors
Clean window sills in three bedrooms (damaged or soiled by vandals)
Clean door facings soiled by vandals . $ 150.00
7.50 (tax)
Service Master of Alexandria
6604 Masonic Drive
Alexandria, Louisiana 71301
*718 7. Replacement of 1 pair of curtains. $ 25.00
1.25 (tax)
Montgomery Ward
1804 McArthur Drive
Alexandria, Louisiana 71301
8. Replace one dummy door knob $ 3.77
Stock #A12A (Weiser)
One pair two-panel bi-fold doors for closet in master
bedroom. $ 73.49
80¾" X 48" opening
One light fixture (living room) . $ 199.49
Two light fixtures (bathroom) @ $21.99. $ 46.18
One light fixture (kitchen). $ 52.49
One light fixture (dining room). $ 59.24
One light fixture (kitchen sink). $ 11.06
Two door stops @ .59 each. $ 1.24
Three curtain rod brackets @ .39 each. $ 1.23
Lowe’s Building Materials
1819 Memorial Drive
Alexandria, Louisiana 71301
9.Replace light bulbs (stolen by vandals)
Eight 60 Watt bulbs @ $2.47 for package of 4 . $ 5.19
Howard’s Department Discount Store
616 McArthur Drive
Alexandria, Louisiana 71301
10.Replace stolen closet rods (4). $ 28.88
17'-1" pipe cut to appropriate lengths
John Ward Hardware
1734 Lee — Alexandria, Louisiana 71301”
Mr. Robert W. McDaniel, who has his own insurance claims adjusting firm, testified to explain how the figure of $495.40 was derived as the amount to offer to the plaintiffs. He explained that after excluding items missing and identifying damaged items the total came to $695.40. He applied two deductibles of $100 each or a total of $200. Thus, the amount of the claim allowed by Audubon less deductibles was $495.40.
The items which Mr. McDaniel testified he recommended as being covered under the vandalism and malicious mischief endorsement were:
Item 2 in part, specifically 20 yards of carpeting at $17.95 per square yard $376.95
Item 4: Replacement of window screen 15.44
Item 5: Replacement of 5 window panes
Paint one wall Touch-up paint in front bedroom
Finish and install bi-fold doors in master bedroom
Repair range vent hood 68.25
*719 Item 6: Strip and refinish kitchen-dining and living room and hallway floors Clean windows sills in three bedrooms (damaged or soiled by vandals)
Clean door facings soiled by vandals $157.50
Item 8 to the extent of: Replacement of 1 dummy door knob 3.77
Replacement of 1 pair of bi-fold doors for closet in master bedroom 73.49
Total for items allowed $695.40
Plaintiffs contend that Audubon is not in good faith in maintaining that it is not liable for items apparently stolen but is liable for items not removed from the premises. Plaintiffs testified that three items Audubon allowed were actually taken from the premises. These were the window screen (Item 4), the dining door knob (included in Item 8), and the bi-fold closet doors replacement (included in Item 8 and finishing and installing included in Item 5). The testimony of Mr. McDaniel and of Arthur L. McGee, who also testified on behalf of Audubon, made it clear that they were of the impression that these items were left on the premises. Otherwise, these items would not have been included in the items to be paid for. If they were in error, their misinformation or mistaken impression resulted in error in plaintiffs’ favor, insofar as amount is concerned. (Actually, the bi-fold doors were taken or torn down but on the premises at the time of the first discovery of the acts of vandalism; it was after the next visit that they were missing.)
In any event, we cannot see that plaintiffs’ argument concerning these three items changes the result of this case. It does not change the policy interpretation we follow. If defendant’s application of that policy is not consistent, it does not change the law. The only change which would result is that Audubon’s liability would be lessened, but Audubon has made it clear that it will not concern itself over the difference and is willing to admit liability for $695.40, less the deductible amounts.
Plaintiffs’ largest single claim is Item 1 covering replacement and installation of the air-conditioner compressor. There is no breakdown showing how much is for replacement cost and how much is for installation. Hence, no allowance may be made for Item 1.
With respect to Item 2, replacement and installation of carpeting, Mr. McDaniel explained that 20 yards was allowed because that was the amount of carpeting not taken away but which was damaged. Thus, recovery for replacement of 24.18 yards should be disallowed. However, the quotation furnished by Clark-Dunbar shows a break down of $793.05 for materials, $128.33 for labor and $39.65 for tax. The total of these three elements comes to $961, which is the full amount plaintiffs claimed. Plaintiffs’ claim list (P-5) shows the total yardage of carpeting to be 44.18. The figure of $17.95 times 44.18 square yards equals $793.03, which was within two cents of the amount listed by Clark-Dunbar for materials. McDaniel allowed 20 yards (20 x $17.95 = $359.00, plus tax of $17.95 of 5%) for a total of $376.95. It may be seen that nothing was allowed for labor to install the carpeting. Moreover, under our holding plaintiffs are entitled to the full amount of the labor costs estimated to install 44.18 square yards of carpeting. This amount is $128.33. Plaintiffs’ recovery should reflect this additional amount.
In all other respects the disallowances by Audubon appear to be proper, based on our conclusion as to the interpretation to be given the insurance policy endorsement. At oral argument counsel for the plaintiffs urged that Audubon had never made any tender or offer for the cost of “cleaning up” the premises and taking care of the littering, soiling, marking and writing on walls, and so forth. Plaintiffs submitted P-5 as their statement of damages. We presume it listed all of plaintiffs' claims for such clean up and it certainly should have. Exhibit P-5 was made a part of plaintiffs’ petition. (See paragraph 8.) We note that *720 Item 6 consists of a proposal by Service Master of Alexandria which presumably covers this type of work. Also, Item 5 includes painting of one wall and touch up painting in the front bedroom. Accordingly, we are not persuaded that Audubon has refused to pay for “clean up” work.
In their petition (paragraph 11), plaintiffs allege they lost rental income of $1,125, and some testimony regarding lost rent was given at the trial. No mention of this claim is made in plaintiffs’ brief, but as we see it, the matter is of no moment in this suit. Regardless of what may have been proved, the endorsement in question provides: “Loss by vandalism or malicious mischief shall mean only the willful and malicious damage to or destruction of the property covered.” Hence, inability to rent the premises because of the condition of the premises would not be covered. Only the cost of direct damage or destruction is included in the definition.
PENALTIES AND ATTORNEYS’ FEES
From our' review of this case we conclude that the trial court correctly denied penalties and attorneys’ fees to plaintiffs. The legal position adopted by the defendant insurer is the position which we deem to be the correct position. Consistent with that position defendant sent plaintiffs a draft or check for $495.40 without requiring any release of their rights. Although we find that the amount should be increased by $128.33, the failure to include this amount was not arbitrary or capricious in the sense of justifying penalties and attorneys’ fees.
CONCLUSION
Both parties in this appeal complain that the trial court’s award of $1,500 to plaintiffs was error, and we agree. The award will be amended to change the award to the amount of $623.73 so as to include the amount tendered of $495.40 plus the sum of $128.33. As thus amended, the judgment is affirmed.
The costs of this appeal are assessed equally to appellants and appellee.
AMENDED AND AFFIRMED.