VICTORY, Judge.
Arthur Sharplin, mortgagee and loss payee, filed suit to recover for alleged insured losses to a metal warehouse under the vandalism provision in a commercial property policy issued by Casualty Reciprocal Exchange (CRE). Finding coverage under the policy, the trial court awarded Sharplin recovery, together with penalties and attorney’s fees. We reverse in part, and remand with instructions.

FACTS

On December 30, 1980, Sharplin sold a shell metal warehouse to Robert and Mildred Johnson by credit deed, creating a mortgage on the property in favor of Sharplin. The Johnsons finished the inside of the building and thereafter used it to conduct several businesses, primarily Titan Aluminum Co., which manufactured doors and windows. The Johnsons purchased insurance on the property from appellant, Casualty Reciprocal Exchange (CRE), naming Sharplin as the loss payee under the policy.
In 1989, Sharplin filed a foreclosure suit against the Johnsons for nonpayment. However, the Johnsons filed for bankruptcy and the foreclosure proceedings were stayed. In December of 1990, while in the midst of the bankruptcy proceedings, the Johnsons[1] were ordered to relinquish the property to the bankruptcy trustee. When Sharplin examined the building shortly after their departure, he found the building “broom clean,” but stripped of virtually all of the improvements added by the Johnsons since 1980. As loss payee under CRE’s policy, Sharplin filed suit on June 6, 1991, claiming that CRE provided coverage for the replacement and installation costs of the items removed[2] from *219 the premises and for property damage sustained.
Following trial, the trial court found CRE liable to Sharplin for $20,431.48 in “damages,” $2,043.14 in penalties, and $7,500 in attorney’s fees. The court did not allow recovery for an outdoor sign, which was not found to be a component part of the building, and the indoor glass panels, which were specifically excluded by policy language. CRE suspensively appealed the trial court’s judgment.

DISCUSSION

It is undisputed that at the time that the alleged events occurred Sharplin, as named mortgage holder of the insureds’ property, qualified as loss payee under CRE’s commercial policy. It is also clear that either the Johnsons or their employees were the parties that removed the items taken in December 1990. Further, it is undisputed that all of the items for which recovery was sought (excluding the outdoor sign) were component parts of the building subject to Sharplin’s mortgage since they were securely fastened to a wall or the foundation of the building, or served as part of the electrical, heating/cooling, or plumbing systems of the building. See LSA-C.C. Art. 466. The prime question before this court is whether the trial court erred in holding that the “vandalism” provision of the CRE-issued policy provided coverage for many of these items.
An insurance policy is a contract and the rules established for the construction of written instruments apply to contracts of insurance. The intention of the parties is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. Commercial Union Ins. Co. v. Piker, 557 So.2d 717 (La.App. 2d Cir.1990); Dear v. Blue Cross of Louisiana, 511 So.2d 73 (La.App. 3d Cir.1987).
In an action on an insurance policy, a party seeking recovery has the burden of proving facts which bring his claims within the coverage of the policy. Commercial Union Ins. Co. v. Piker, supra; Oliver v. Saia, 510 So.2d 770 (La.App. 1st Cir.1987), writ denied, 514 So.2d 463 (La.1987).
The policy in question provides coverage for direct physical damage to or loss of covered property only if it is a result of specified types or causes of loss; i.e., fire, lightning, explosion, wind storm or hail, smoke, riot or civil commotion, vandalism, sprinkler leakage, etc. There is no coverage for losses occurring from other causes, including theft. The policy’s vandalism clause provides:
8. Vandalism, meaning willful and malicious damage to, or destruction of the described property. We will not pay for loss or damage to glass (other than glass building blocks) that is part of a building, structure, or an outside sign; (a) but we will pay for loss or damage to other property caused by or resulting from breakage of glass by vandals; (b) caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.
Despite Mrs. Johnson’s denials, the trial court found sufficient proof that the John-sons had a motive for committing intentional malicious acts, citing various evidence adduced at trial:
1. Johnsons’ history of late payments to Sharplin;
2. Sharplin’s strong language in demand letters;
3. Johnsons’ refusal to allow Sharplin entry to the building in December 1989;
4. Johnsons’ hotly contested bankruptcy proceeding; and
5. Johnsons’ failure to give notice of intent to vacate.
The court stated that the Johnsons’ deliberate actions amounted to purposeful and intentional acts calculated to cause property *220 damage or designed to diminish the value of Sharplin’s security.
Accepting the trial court’s finding of ■willful and malicious intent as supported by the record, we note that the vandalism section of the policy only covers property that is proven to have been maliciously and willfully destroyed or damaged. However, the trial court’s written opinion repeatedly refers to items damaged or removed. The trial judge apparently accepted appellee’s contention that the removal of a component part of a building was vandalism. However, such a contention was expressly rejected in Sterling v. Audubon Insurance Co., 452 So.2d 709 (La.App. 3d Cir.1984), writ denied, 456 So.2d 169 (La.1984). The Third Circuit held that an insured under a similar vandalism provision was not entitled to recover the value of the component parts removed (by burglars) from the insured premises, although the cost of installing the items was covered by the express language allowing recovery for “damage to the building(s) covered herein by burglars.”
Following Sterling, we conclude that the removal of the component parts of the metal building in this case does not constitute vandalism under the policy. Thus, appellant is entitled to recovery only for those items that he proved were either destroyed or damaged, but not those which were merely removed from the premises.
Sharplin produced photographs showing the condition of the premises in December 1989 as compared to photographs taken in December 1990, following the Johnsons’ departure. These photographs showed substantial damage to the circuit breakers and wiring in the main electrical panel. In addition, the photographs reveal that the wiring to the lights, telephones and electrical outlets were cut and pushed back into the wall after the removal of those items. Herbert Newman, manager of ABC Treadco, a neighboring business, testified that he witnessed Titan employees burning electrical wiring. Carl Cloessner, a general contractor accepted as an expert, offered estimates to repair the damage and to replace the wiring destroyed. Considering the evidence of destruction and the testimony of Cloessner, the trial judge was not clearly wrong in finding coverage for the damage to the electrical system, including the wiring.
Testimony was also adduced from other employees of ABC Treadco Tire Co. who witnessed strange activities at the budding just prior to the Johnsons’ departure. Newman testified by deposition that he became suspicious of actions at Titan during early December 1990 when he observed the burning of perfectly good lumber, furniture, plywood, wiring, a bathroom vanity, and destruction of glass panels.[3] Other employees of Treadco, Calvin Popwell and Lee Wright, confirmed that both Mrs. Johnson and her son, Johnny Johnson, were involved in the destruction of plywood, lumber, wiring and a vanity cabinet. The record supports the trial court’s finding that the Johnsons or their employees willfully destroyed these items, thus entitling Sharplin to recovery under the vandalism section of CRE’s policy.
In addition, plaintiff claimed that the overhead door panels were damaged during this move. Newman testified that the door was working properly and in good condition prior to the events in December 1990. Thus, the record supports the court’s ruling that the overhead door was vandalized under the terms of the policy.[4]
However, the record fails to support the court’s ruling that the four-ton electric cooling and heating unit, the water heater, the air vents, the air conditioning grill, the remote chilled water unit, the lockset, the carpet and the light fixtures were vandalized, i.e., destroyed or damaged. Plaintiff presented no evidence to support his contention *221 that such items were vandalized, and admitted on cross examination that he had no knowledge of whether the items were merely removed, or were destroyed or damaged. (Treadco witnesses testified that in early December the Johnsons loaded a bobtail truck many times with contents from the building and took them from the location.) Even though these items constituted component parts of the insured property and were wrongfully removed,[5] the policy simply does not cover items that are removed. Rather, it covers only items that are willfully and maliciously destroyed or damaged. Therefore, the trial court erred in granting recovery for these items. Further, the trial court erred in making an award which included full costs to purchase and install items found to be missing. The policy only provides coverage for the actual cash value[6] at the time of the loss or damage.
The trial court relied on P-46, one of Cloessner’s estimates in rendering his judgment. However, neither P-46, nor P-51, another Cloessner estimate, sufficiently itemize covered repairs from noncovered items, nor do they set out the actual cash value as provided in the policy. For example, the estimates do not separate the cost of the missing lighting fixtures, which is not recoverable, from the cost of repairing the remainder of the electrical system, which is covered. For this reason, the case must be remanded to the trial court for the taking of additional evidence to determine the actual cash value, as defined in the policy, of the missing items that were shown to have been vandalized and the cost of repairing the electrical system[7].

PENALTIES AND ATTORNEY’S FEES

Sharplin advised Gene Galligan, the original agent on the policy, of the loss and claim under the vandalism section of the policy by certified mail on March 13, 1991. Additional information was needed in order to file a claim, so Sharplin complied with Galligan’s additional request on March 26, 1991. Because Galligan no longer handled CRE’s policies, he testified that he sent the proof of loss by regular mail on April 1, 1991, instead of directly contacting an adjuster by telephone. Sharplin continued to contact Galligan concerning the loss, and on May 22, 1991, Galli-gan was informed that the proof of loss had not been received by CRE’s office. Another copy of the claim was forwarded to CRE by Galligan on that date.
On June 4, 1991, Mike Shore was assigned to adjust Sharplin’s claim. He testified that he attempted to contact the John-sons and Sharplin, but could reach neither. Shore reviewed documents concerning the sheriff department’s criminal investigation and contacted the district attorney’s office to discuss the matter. Further, during a conversation with the Johnsons’ attorney, Shore was told that the Johnsons removed and retained numerous items from the building because they were covered by a separate SBA mortgage.[8] Although Shore never spoke to Sharplin, the Johnsons or the Tre-adco employees, he had good reason to determine that CRE’s policy did not cover items that were removed by the owners of the property. CRE denied coverage based upon its conclusion that the Johnsons had removed the items from the premises, not vandalized them.
Further, a reasonable trier of fact could have concluded from the evidence presented that Sharplin had failed to carry his burden of proof on all items. None of the eyewitnesses could say with certainty that the items were actually burned or destroyed. *222 The evidence of damage or destruction of the items for which we have affirmed recovery is circumstantial. For example, we have approved recovery for the missing wooden cage, although none of the witnesses could say it was actually destroyed or damaged, but only that a lot of wood was burned. Clearly, the Johnsons had many wooden glass frames and racks in the budding that were not covered by the mortgage, and thus, not the policy. Under these circumstances, we cannot say that CRE was arbitrary and capricious in determining that there was insufficient proof of vandalism, and thus no coverage. For these reasons, we find the trial court’s award of penalties and attorney’s fees was clearly wrong and must be reversed.

DECREE

The judgment of the trial court is amended to allow plaintiff recovery against the defendant for the following only:
(1) 3 pieces of ¾" C-D plywood,
(2) 53-0 LF X 9-0 high mesh and wood partition,
(3) bathroom vanity,
(4) repairs to electrical system, including main and secondary wiring, and main electrical panel, and
(5) repairs to overhead door, already set at $225.
The case is remanded to the trial court to receive evidence on items 1-3 to determine their actual cash value, and on item 4 to separate the amount for electrical repairs allowed by this opinion from the total of $6,128 listed on Cloessner’s letter to plaintiff of March 22, 1991 (see P-46). The award of attorney’s fees and penalties is reversed. Costs in this court and in the trial court are to be divided equally between the parties.
AMENDED IN PART, REVERSED IN PART, REMANDED WITH INSTRUCTIONS.
BROWN, J., dissents in part with reasons.

. Mr. Johnson died, but Mildred Johnson and her major children, continued in the business.

. Sharplin alleged in his petition that the John-sons wrongfully removed the following items from the premises: a four-ton electric cooling *219 and heating unit, light fixtures (indoor and outdoor), a lock set on an office door, sliding glass patio doors, carpet, air conditioning grill, water heater, vanity, circuit breaker and wiring to main panel, wire mesh wall, chilling tower unit, panels on overhead door and various paneling and insulation.

. The vandalism section of the policy specifically excludes from coverage the loss or damage to glass (other than glass building blocks) that is part of the insured property. Although the record supports a finding that glass panels were destroyed, trial court correctly excluded recovery for the missing glass panels.

. Mrs. Johnson said the door was accidentally damaged in 1980 when they moved into the premises, but was still usable. However, the judge expressly rejected all of her testimony on the grounds of credibility and lack of personal knowledge.

. LSA-R.S. 14:219 makes it a misdemeanor to willfully remove, with the intent to defraud, any part of a building subject to a conventional mortgage without first obtaining written consent of the mortgagee. Although the Monroe District Attorney's office investigated, it did not find sufficient evidence to prosecute the Johnsons for their actions.

. Although the policy contains a replacement cost option, CRE is not obligated to pay on a replacement cost basis until certain conditions are met, one of which requires the damaged property be actually repaired or replaced.

. The $225 cost of repairing the overhead door has already been adequately established by P — 46.

. Sharplin met with the Johnsons’ attorney at the premises in early December to gain access to the building. When they discovered the improvements were missing, the attorney inquired of Sharplin “what if the clients were to bring this stuff back?”